STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
LAURIE A. CORSARO, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOSEPH L. RANURO, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES
F. MUNLEY, DEFENDANT-APPELLANT.

Argued January 20, 1987—Decided June 23, 1987.

*Patricia K. Costello, Thomas J. Cammarata* and *Maureen P. Sogluizzo* argued the cause for appellants (*McAlevy & Costello*, attorneys for Laurie A. Corsaro, *Shaljian, Cammarata, O'Connor & Messano*, attorneys for Joseph L. Ranuro and *Thomas A. DeClemente*, attorney for James F. Munley; *Thomas J. Cammarata* on the joint brief).

*Steven Pasternak*, Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards*, Attorney General of New Jersey, attorney; *Marijean Raffetto Stevens*, Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This appeal raises the issue of whether it is proper in a criminal case to substitute a juror after a partial verdict has been returned and to allow the reconstituted jury to reach a

final verdict on remaining charges. The Appellate Division, in an unreported opinion, affirmed such a final verdict convicting defendants for various gambling offenses. The Appellate Division stressed that defense counsel requested the substitution of an alternate juror after the original jury had returned a verdict on some but not all of the charges. The Appellate Division also emphasized that the trial court instructed the reconstituted jury to commence its deliberations anew on remaining counts and to consider the remaining charges independently. These circumstances convinced the Appellate Division that the procedure followed by the trial court "did not cut mortally into the substantive rights of the defendant[s]." *State v. Harper*, 128 *N.J.Super.* 270, 277 (App.Div.1974), certif. denied, 65 *N.J.* 574 (1974). This Court granted defendants' petition for certification, 105 *N.J.* 515 (1986). We disagree with the court below and reverse.

## I.

Defendants were indicted and tried on various gambling-related charges.[1] After the jury had returned a verdict convicting defendants Munley and Ranuro, under *N.J.S.A.* 2C:37–4a, of maintaining a gambling resort; defendant Ranuro, under *N.J.S.A.* 2C:37–2(a), of a disorderly persons offense of promoting gambling; and defendant Corsaro, under *N.J.S.A.* 2C:37–3a(2), of possession of gambling records, the trial court instructed the jury to continue deliberations as to whether the defendants were guilty under *N.J.S.A.* 2C:5–2 of conspiracy to

---

[1] All defendants were indicted under *N.J.S.A.* 2C:37–2 for promoting gambling and under *N.J.S.A.* 2C:5–2 for conspiracy to promote gambling. Defendants Joseph Ranuro and Laurie Corsaro were indicted under *N.J.S.A.* 2C:37–2(a) for receiving gambling records. Defendant Laurie Corsaro was indicted under *N.J.S.A.* 2C:37–3a(2) for possession of gambling records. Defendants James Munley and Joseph Ranuro were indicted under *N.J.S.A.* 2C:37–4a for maintaining a gambling resort. A fourth defendant, Rosemary Maiorino, was indicted on all counts, but tried separately.

promote gambling, and whether defendant Corsaro was guilty under *N.J.S.A.* 2C:37–2 of promoting gambling.

When the jury reconvened to resume deliberations, one juror was missing. He arrived over an hour late, and appeared to counsel for defendant Corsaro to be intoxicated. What transpired between court and counsel is critical and cannot be readily summarized or paraphrased. Counsel for Corsaro requested at sidebar that an alternate be substituted. The trial court asked the other counsel for their positions. They responded as follows:

> MR. PRINDAVILLE [prosecutor]: I would think it would be better to talk to the man and see what condition—what his condition appears to be.
>
> MR. CAMMARATA [counsel for Ranuro]: My only problem with your doing it right at this moment is it's going to be obvious to the jury and if you subsequently decide you are going to leave him on it's going to be obvious that we raised the question about him, and they may hold it against us in some fashion. I would suggest to you if you're—

The court interjected some explanation of the procedures it contemplated for substituting an alternate; counsel for defendant Ranuro, however, raised the problem at issue in this case:

> MR. CAMMARATA: I'm sorry, I didn't mean to interrupt you, the only problem I have, that I foresee, is that now you're going to start to tell them to start deliberations anew.
>
> THE COURT: I have to tell them that.
>
> MR. CAMMARATA: Yeah, I know you do, I realize that. But, you have a situation where they've come back with partial verdicts, now they're considering a conspiracy charge and that charge as to Laurie Corsaro.
>
> THE COURT: I have no problem with that.
>
> MR. CAMMARATA: I don't know whether—
>
> MISS SOGLUIZZO (counsel for Munley): The person that has been put on hasn't been part of the original deliberation.
>
> THE COURT: That doesn't matter, I wouldn't let them change their minds on the other verdicts if they tried. Those verdicts are taken, once a verdict is taken, that's it.
>
> MR. PRINDAVILLE: They are starting all over now, right?
>
> MR. CAMMARATA: If I could just finish my train of thought. The problem that I foresee is that they are considering a conspiracy charge and they've already made finding of guilty on a substantive charge that is part—that the conspiracy is directed toward. The Alternates haven't been involved in the deliberations on the substantive charge. Therefore, they will go into the jury room and they are in a position where they are accepting a verdict—

THE COURT: Let me interrupt, are you changing your position?

MR. CAMMARATA: No, I'm just raising a problem.

THE COURT: Well, then, you just raise a problem, okay, you got to take a position.

MISS COSTELLO [counsel for Corsaro]: Judge, my position is I don't think that man should be sitting on this jury.

THE COURT: Yes.

MISS COSTELLO: I'll object for the record that you're not recharging them again, but I understand your ruling.

THE COURT: You object to what?

MISS COSTELLO: I object for the record that you're not going to charge them to start everything, including—

THE COURT: I will charge them.

MR. PRINDAVILLE: He will charge them.

MISS COSTELLO: Will charge that they are to start anew on the counts that haven't been decided.

THE COURT: Only on the ones that haven't been decided.

MISS COSTELLO: I understand that, I will put an objection on the record, but I'm much more concerned that this man sit in the condition he's in.

MR. CAMMARATA: What my application would be then, in essence, would be if you substituted a juror, and I think it's proper for you to do so based on my observations, of course, you have to do that and I think it's proper because of the juror's condition, but my application, I suppose really is that they start anew on the entire deliberations, not just the charges that they have not returned a verdict on.

MR. PRINDAVILLE: I object, I object to that.

MISS SOGLUIZZO: Your Honor, I join in on co-counsel's objection.

THE COURT: Well, in light of that objection, I'm going to bring the juror over, if that's your position, then I consider it a much more serious question and well within my discretion as to whether I substitute for him or not.

MISS COSTELLO: Why don't we discuss it, then?

THE COURT: Because it's one thing to substitute him where there is no possibility of prejudice, I don't mind doing that without even discussing it, you know, talking to him, except for a brief, you know, good morning, Sir, and take a seat. But, if you are taking a position, if you want to take the position you're taking now, I don't know which way I would rule, because I don't know what his problem is, frankly, looking over at him from here it didn't look as bad as what you were describing on the record. But, I don't know until I question him.

At this point defense counsel requested a few moments to confer as to their position on whether substitution would require fresh deliberations on all issues; after conferring, counsel for Ranuro stated:

MR. CAMMARATA: Judge, we've agreed among counsel that we would like you to take him off. And we won't object to you at this point just recharging the jury to start their deliberations over, anew on the remaining charges.

THE COURT: All right, that's your position, Miss Sogluizzo?

MISS SOGLUIZZO: Yes, Your Honor.

THE COURT: Your position?

MISS COSTELLO: Yes, Your Honor.

The trial court then called the apparently intoxicated juror to sidebar and satisfied itself that the juror should be excused. This procedure puzzled defense counsel, who stated:

MISS COSTELLO: If you're satisfied, now that he's excused for cause, that we weren't incorrect in our observations of his condition, does that alter your opinion at all to the legal issue of whether to recharge them, if you want to hold us to what we've just said?

THE COURT: Oh, no, no, no, no, no.

MISS COSTELLO: But, I'm just asking you.

THE COURT. Yes. I will.

MISS COSTELLO: Because you said your decision would be affected by whether or not—

THE COURT: That's not what I—

MISS COSTELLO: Okay, I'm just raising it.

THE COURT: Fair enough.

MISS COSTELLO: Nothing else but that.

THE COURT: Fair enough.

MR. CAMMARATA: Judge, quite frankly, if it is error, anyhow, whether we object or not, I think it's error, you know, I think it's the type of error, some other form of error.... I don't know the cases, I've had jurors substituted before verdicts, but never where—

THE COURT: Well, the most that would happened is if it infects anything, it would infect whatever the new jury does. It would obviously not infect the old. I don't think we're taking much risk.

MR. CAMMARATA: Okay.

MISS COSTELLO: Okay.

The court then seated the alternate juror, and instructed the jury as follows:

THE COURT: All right, Ladies and Gentlemen. I wish to emphasize in the clearest terms that in these circumstances when a new juror joins you, that you are to begin your deliberations anew with respect to the open charges that you are considering....

The newly-constituted jury returned guilty verdicts on all the remaining open charges.[2] Thereafter, all defendants moved unsuccessfully for a new trial on the grounds that a mistrial should have been granted when Juror Number Four was excused. All defendants appealed; their appeals were dismissed by the Appellate Division.

## II.

Defendants argue that it was improper to substitute a juror once a partial verdict had been returned, notwithstanding the fact that defense counsel allegedly approved that very procedure; a mistrial, in defendants' view, was in order. The State, on the other hand, insists that the substitution of the juror in this case does not constitute reversible error because the jury was required to begin fresh deliberations on the open charges. Furthermore, the State argues, any error by the trial court was invited and acquiesced in by the defense counsel, who approved the substitution after conferring among themselves.

## A.

The threshold issue is whether defense counsel were responsible directly or indirectly for the asserted error, for, as was stated in *State v. Harper, supra,* 128 *N.J.Super.* at 277:

> Trial errors which were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.... "The defendant cannot beseech and request the trial court to take a course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial." *State v. Pontery, supra,* 19 *N.J.* [457] at 471 [(1955)]

This general principle does not foreclose reversal; rather, the question is whether "the particular error ... cut mortally into the substantive rights of the defendant":

---

[2]Defense counsel maintain that the reconstituted jury deliberated for only one-half hour. There is no record evidence of this.

> where the invited error did not demonstrably impair a defendant's ability to maintain a defense on the merits or where the after-criticized judicial action was reasonably thought to secure a trial or tactical advantage for the defendant, it has not been considered so egregious as to mandate a reversal on appeal. We must recognize, however, that, although brought about by defendant, there are errors of such magnitude that they trench directly upon the proper discharge of the judicial function. Some errors "may go so plainly to the integrity of the proceedings that ... a new trial is the just course...." *State v. Macon, supra,* 57 *N.J.* [325] at 338 [ (1971) ]. We conceive that errors of this dimension may be cognizable on appeal as plain error notwithstanding their having been precipitated by a defendant at the trial level. [*Id.* at 277–78.]

Accordingly, situations in which the conduct of the defense counsel arguably induced error call for "a close, balancing examination of the nature of the error, its impact on the ... jury's verdict and the quality of defendant's motives and conduct in bringing about the error." *Id.* at 278. We shall therefore consider first the magnitude of the alleged error, and then the quality of the defense counsels' motives and conduct.

The first inquiry, dealing with the magnitude of the asserted error and whether it constitutes "plain error," focuses in this case upon the role of the jury. We have considered this subject in a number of variant but related contexts.

■ The sanctity of the jury role and the integrity of jury deliberations are crucial aspects of a criminal prosecution. *See State v. Ramseur,* 106 *N.J.* 123 (1987); *State v. Ragland,* 105 *N.J.* 189 (1986). We have stressed that the jury has a "nondelegable and nonremovable" responsibility to find the facts and to determine ultimate guilt or innocence. *State v. Ingenito,* 87 *N.J.* 204, 210–12 (1981). The key to the proper discharge of this duty by the jury is the deliberative process, which must be insulated from influences that could warp or undermine the jury's deliberations and its ultimate determination. *State v. Czachor,* 82 *N.J.* 392 (1980); *State v. Simon,* 79 *N.J.* 191 (1979). Not surprisingly, we have held that errors related to juror substitution—with their potential for introducing extraneous influences—are cognizable as plain error. *State v. Trent,* 79 *N.J.* 251, 157 (1979) (citing *State v. Harper, supra,* 128 *N.J.Su-*

*per.* 270). The jury's singular responsibility demands that the integrity of jury deliberations be preserved.

In light of the centrality of jury deliberations to our criminal justice system, errors that could upset or alter the sensitive process of jury deliberations, such as improper juror substitution, "trench directly upon the proper discharge of the judicial function"; for this reason such errors are "cognizable on appeal as plain error notwithstanding their having been precipitated by a defendant at the trial level." *State v. Harper, supra,* 128 *N.J.Super.* at 278.

■ Under the circumstances of this case, moreover, the magnitude of the alleged error is undiminished by the conduct of defense counsel. Defense counsel in this case acted in undeniable good faith. The transcripts reflect not guile in inducing error, but confusion in ascertaining the proper course to take. As recounted *supra* at 343–345, after the trial court indicated that it would examine the juror—and thus that it might not excuse the juror—if defense counsel were to insist that deliberations begin anew on all counts, defense counsel were divided among themselves as to whether to press for new deliberations on all counts. After conferring, defense counsel agreed that the juror should be removed, adding that "we won't object to you at this point just recharging the jury to start their deliberations over, anew on the remaining charges." The court summoned the juror to sidebar nonetheless, then excused him. This procedure puzzled defense counsel, who asked:

> MISS COSTELLO: If you're satisfied, now that he's excused for cause, that we weren't incorrect in our observations of his condition, does that alter your opinion at all to the legal issue of whether to recharge them, if you want to hold us to what we've just said?
>
> THE COURT: Oh, no, no, no, no, no.
>
> MISS COSTELLO: But, I'm just asking you.
>
> THE COURT: Yes. I will.
>
> MISS COSTELLO: Because you said your decision would be affected by whether or not—
>
> THE COURT: That's not what I—

MISS COSTELLO: Okay, I'm just raising it.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

MR. CAMMARATA: Judge, quite frankly, if it is error, anyhow, whether we object or not, I think its error, you know, I think its the type that's error anyhow.

THE COURT: This will be in between plain error and objected to error, some other form of error.

Given the gravity inherent in an error implicating the jury's deliberative process, and the evident good faith of counsel in this instance, the issue of the propriety of juror substitution after a partial verdict has been returned is properly before us as plain error notwithstanding its precipitation by defendants. *State v. Harper, supra,* 128 *N.J.Super.* at 277–78. The question, then, is whether the substitution of a juror in this case after a partial verdict had been returned was "clearly capable of producing an unjust result." *R.* 2:10–2.

### B.

The discretion of trial courts to substitute jurors is governed by *Rule* 1:8–2(d), which provides in pertinent part:

If the alternate jurors are not discharged and if at any time after submission of the case to the jury, the juror dies or a juror is discharged by the court because he is ill or otherwise unable to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged. When such a substitution of an alternate juror is made, the court shall instruct the jury to recommence deliberations and shall give the jury such other supplemental instructions as may be appropriate.

The facial constitutionality of *Rule* 1:8–2(d) was upheld by this Court in *State v. Miller,* 76 *N.J.* 392 (1978). The Court emphasized, however, that "when an alternate juror is so substituted, the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew and that, as the trial judge stated herein, 'you are in effect going to have to start over.'" *Id.* at 407. The Court further cautioned that "[t]he rule is discretionary with the trial court because a situation might arise where it would be unwise to utilize this procedure. The longer the period of time the jury deliberates, the greater is the possibility of prejudice should a juror be substituted or re-

placed." *Id.* *See State v. Lipsky,* 164 *N.J.Super.* 39 (App.Div. 1978).

We recognize that the essence of jury deliberations is the joint or collective exchange of views among individual jurors. It is therefore necessary to structure a process and create an environment so that the mutual or collective nature of the jury's deliberations is preserved and remains intact until a final determination is reached. The reconstitution of the jury by the substitution of a new juror in the course of the jury's deliberations can destroy the mutuality of the jury's deliberations. These concerns underlay this Court's decision in *State v. Trent, supra,* 79 *N.J.* 251. This Court there applied the rule of *Miller* in reversing an Appellate Division ruling that an alternate was properly substituted when, after six and a half hours of deliberation, one juror was unable to continue. This Court held that the trial court's instruction that the alternate juror should " 'continue with deliberations with the jury' " was "manifestly incorrect."

> The suggestion that deliberations should continue unbroken was precisely the opposite of what should have been imparted—not only to the alternate but, of course, to the remaining eleven.... The absence of any instruction at all of the necessity to recommence deliberations constitutes plain error of such magnitude as to call for the reversal of defendant's convictions.... The procedure followed in this case so neglects the zealously protected fundamental right of fair and impartial deliberations as to call for a new trial. [*Id.* at 256–57 (citation omitted).]

The *Trent* Court adopted, as the "controlling rationale" for this State's rule, the California Supreme Court's rationale in *People v. Collins,* 17 *Cal.*3d 687, 131 *Cal.Rptr.* 782, 552 *P.*2d 742 (1976):

> The requirement that 12 person reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of

number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity. [*Id.* at 693, 131 *Cal.Rptr.* at 786, 552 *P.*2d at 746 (quoted in *Trent, supra,* 79 *N.J.* at 256).]

*See People v. Ryan,* 19 *N.Y.*2d 100, 278 *N.Y.S.*2d 199, 124 *N.E.* 2d 710 (1966).

Preservation of the jury's independence from extraneous— even judicial—influences is a value repeatedly confirmed by this Court. *See State v. Simon, supra,* 79 *N.J.* at 199–200 (discouraging use of special interrogatories in criminal trial because of "potential for destroying the ability of the jury to deliberate upon the issue of guilt or innocence free of extraneous influences"); *Wright v. Bernstein,* 23 *N.J.* 284, 294–95 (1957) (jury's verdict "must be ... entirely free from the taint of extraneous considerations and influences"); *see also State v. Ramseur, supra,* 106 *N.J.* 123 (reversing death sentence because supplemental jury charges coerced the verdict); *State v. Ingenito, supra,* 87 *N.J.* at 204 (preserving integrity of jury deliberations against use of collateral estoppel in criminal trial; affirming the right of a criminal defendant to have all elements of an offense decided by the same trier of fact); *State v. Czachor, supra,* 82 *N.J.* 392 (disapproving the use of coercive supplemental charges to break jury deadlock); *cf. State v. Ragland, supra,* 105 *N.J.* 189 (disapproving charge that had effect of directing a verdict, but approving use of charge to the effect that if jury finds certain facts, it "must" find defendant guilty). The delicate balance of number and unanimity in jury deliberations is an essential aspect of jury deliberations; preserving that balance is essential to maintaining jury independence.

The concerns expressed in *Miller* and *Trent* about juror substitution, then, are best understood in the context of this Court's broader concern with the integrity of jury deliberations and the continuing condition of collectivity and mutuality among the individual jurors as integral aspects of the deliberative process within the jury. To allow juror substitution at an advanced stage of deliberations would be to sanction a rift in

the collectivity and mutuality of the jury's deliberations and to impose precisely the kind of extraneous influence upon the deliberative process that this Court has forbidden.

It is instructive to recognize the distinction between what has occurred in this case and the situations dealt with in the *Miller-Trent* cases. First, the trial court in this case, unlike the trial court in *Trent*, did instruct the newly constituted jury that it was to "Begin [its] deliberations anew" (although it limited this instruction to "the open charges"). Second, the jury in this case, unlike the juries in *Miller* and *Trent*, had already deliberated to the extent of returning a partial verdict. The difficulty raised by these distinguishing facts is that they cut both ways; the fact that the trial court instructed the jury to "begin ... anew," in other words, seems to satisfy the rule of *Miller* and *Trent*, whereas the fact that the jury had deliberated to such an extent that it reached verdicts on some counts seems to bring this case within the *Miller* court's cautionary observation that "a situation might arise where it would be unwise [to substitute a juror]. The longer the period of time the jury deliberates, the greater is the possibility of prejudice should a juror be substituted or replaced." *State v. Miller, supra,* 76 *N.J.* at 407.

There is a grey area between jury deliberations and determinations. The *Miller* Court's concern was that if the jury deliberates for an extended period of time, it will have progressed so far in its deliberations that it will have reached determinations. Hence, at that juncture, the substituted juror will not have "had the benefit of the deliberations of the other 11," *People v. Collins, supra,* 17 *Cal.*3d at 693, 131 *Cal.Rptr.* at 786, 552 *P.*2d at 746 (quoted in *Trent, supra,* 79 *N.J.* at 256), and may indeed be pressured by the amount of time the jury has deliberated and by the extent of their progress to conform to their findings and verdict. Clearly, the substantial progress toward determinations that is signified by the period of time the jury has been deliberating, which was the concern of the *Miller* Court, is self-evident when, as in this case, deliberations have actually resulted in announced verdicts.

The State argues that the trial court explained to the jury the independent nature of each count in the indictments, and cites *State v. Coruzzi*, 189 *N.J.Super.* 273, 301 (App.Div.) certif. denied, 94 *N.J.* 531 (1983), for the proposition that "[u]nless defendant can show that the jury deliberately ignored the court's simple and clear instructions, it must be assumed that separate consideration was given to each count of the indictment." The State also notes, in this connection, the fact that Ranuro and Munley's maintenance of a gambling resort, Ranuro's promotion of gambling, and Corsaro's possession of gambling records—all included in the jury's partial verdicts—had to be treated by the newly constituted jury as conclusively established. This, according to the State, did not prejudice defendants because juries are allowed to consider prior convictions in other contexts. *See, e.g., State v. Ingenito, supra,* 87 *N.J.* at 224 (Schreiber, J., concurring).

What *Miller* and *Trent* contemplate and caution against, however, is the substitution of a juror in a situation where the presumption that jurors follow instructions is unreasonable or untenable. Thus, where the deliberative process has progressed for such a length of time or to such a degree that it is strongly inferable that the jury has made actual fact-findings or reached determinations of guilt or innocence, the new juror is likely to be confronted with closed or closing minds. In such a situation, it is unlikely that the new juror will have a fair opportunity to express his or her views and to persuade others. Similarly, the new juror may not have a realistic opportunity to understand and share completely in the deliberations that brought the other jurors to particular determinations, and may be forced to accept findings of fact upon which he or she has not fully deliberated.

██ In this case, it is reasonable to assume that the fact-findings of the jury reflected in their partial verdicts are related to the convictions for maintenance of a gambling resort, promotion of gambling, and possession of gambling records, and

that these factual circumstances also underlay the jury's deliberations with respect to conspiracy. The likelihood that the defendants' guilt on the earlier-decided counts would be accepted by the substituted juror or would not be truly amenable to reconsideration and reevaluation by the original jurors suggests that the new juror's contributions to the deliberations on the "open charges" would have been minimal at best. *See State v. Simon, supra,* 79 *N.J.* 191. Indeed, *State v. Ingenito,* upon which the State relies, stands for the proposition that use of the collateral estoppel doctrine, "which serves to establish virtually conclusive evidence of a critical element of criminal guilt," against a defendant in a criminal trial is impermissible, for "not only does it seriously hobble the jury in its quest for truth by removing significant facts from the deliberative process, but it constitutes a strong, perhaps irresistible ... pull towards a guilty verdict, which is utterly inconsistent with the requirement that a jury remain free and untrammeled in its deliberations." 87 *N.J.* at 217. While the facts underlying the partial verdict in this case did not necessarily constitute essential elements of the open charges, reliance on the convictions could have established the overt act requirement of conspiracy under *N.J.S.A.* 2C:5–2(d); the jury's conclusion, moreover, in the partial verdict that Corsaro possessed gambling records was a "strong, perhaps irresistible, gravitational pull" toward her conviction for "promoting gambling," *i.e.,* engaging "in conduct which materially aids any form of gambling activity." *N.J.S.A.* 2C:37–2.

Furthermore, the jury responsible for determining the remaining charges in this case—the reconstituted jury—was not the *same* trier of fact that determined the prior charges. In this case, as in *Ingenito,*

> the right to a jury in a criminal trial ordinarily includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense. Unless the same jury is permitted to deliberate meaningfully upon all of the issues that are crucial to a verdict of guilt or innocence ... a defendant will not have secured the jury right contemplated by the Constitution. [87 *N.J.* at 217.]

Here, the loss of one juror from the original jury and the substitution of a new juror made the resultant jury different from the first jury. To the extent that the original individual jurors would inevitably be influenced by *their* prior determinations, which would carry over into the final verdicts on the open and remaining charges, the final verdict joined in by the new juror could not represent a decision made by the *same* jury as a result of fresh deliberations on *all* important aspects of the open charges.

The requirement that juries begin deliberations anew after a juror has been substituted would be rendered nugatory if the reconstituted jury is likely to accept, as conclusively established, facts that could underlie, if not necessarily establish, its verdict on the open charges.[3] While the jury was not technically required to accept the facts underlying the partial verdict, the likelihood that deliberations would truly "begin anew" was so remote, in our opinion, as to foreclose juror substitution.

Accordingly, we hold that substitution of a juror after the return of partial verdicts for the purpose of continuing deliberations in order to reach final verdicts on remaining counts was plain error. Upon satisfying itself that Juror Number Four was unable to continue deliberations, the trial court should have either declared a recess until such time as the juror was able to continue, or declared a mistrial on the open charges. Because the court did neither, defendants' convictions on the "open charges" must be reversed.

### III.

For the reasons stated, all defendants' convictions on the conspiracy counts, and defendant Corsaro's conviction on the

---

[3]We intimate no view as to whether juror substitution after a partial verdict has been returned would ever be proper. We note only that if that were to be permitted, the fact-finding on the open charges would have to be completely divorced from the fact-findings underlying the partial verdict.

promotion of gambling count, are reversed, and the case is remanded for a new trial on these charges.

*For Reversal and Remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.