Judge CUFF (temporarily assigned),
dissenting.
The majority holds that the trial judge properly issued a jury instruction consistent with State v. Czachor, 82 N.J. 392, 413 A.2d 593 (1980), when the jury reported it was deadlocked, and properly substituted an alternate juror following the Czachor instruction after a deliberating juror fell ill and was unable to continue. Ante at 136, 93 A.3d at 742. In doing so, the majority also overrules State v. Banks, 395 N.J.Super. 205, 928 A.2d 842 (App.Div.), certif. denied, 192 N.J. 598, 934 A.2d 639 (2007), “to the extent that it held that it generally barred trial courts from substituting a juror and directing new deliberations” following declaration of impasse and delivery of a Czachor charge. Ante at 154-55, 93 A.3d at 753. I readily join the majority opinion to the extent that it holds that the trial court properly issued a Czachor charge when informed by the jury that it had reached an impasse in its deliberations. I would also join the majority opinion if the ill juror had been *156 substituted before the jury declared an impasse. I respectfully dissent from the majority holding that the trial court could discharge the ill, deliberating juror, substitute an alternate juror, and instruct the jury to continue its deliberations anew following declaration of impasse and issuance of a Czachor instruction.
Our Rules provide that a juror may be replaced once a case has been submitted to the jury only in the event the juror dies or because of illness or other inability to continue. R. 1:8 — 2(d)(1). However, the inquiry does not end there. We must then ask a second question: whether “the jury’s deliberations ha[ve] proceeded so far towards completion that a reconstituted jury would not [be] capable of considering [the] defendant’s guilt or innocence anew.” State v. Jenkins, 182 N.J. 112, 116, 861 A.2d 827 (2004). If the answer to that inquiry is in the affirmative, a mistrial must be declared. In my view, the jury had proceeded too far in this case to permit the trial court to have a reasonable expectation at the time of substitution that the newly seated juror could be a full and equal participant in the deliberations. I, therefore, respectfully dissent and would affirm the Appellate Division judgment.
I.
After deliberating over the course of five days, the jury sent a note to the court, stating, “The jury was unable to reach a unanimous verdict on any count. What is your next instruction?” The court, in agreement with counsel, instructed the jury to continue deliberating, delivering the standard charge outlined by this Court in Czachor, supra, 82 N.J. at 405-07, 413 A.2d 593. Following a lunch break and less than two hours of deliberation, the jury advised the trial court through another note that a juror had become ill and did not expect to be present the following morning. The court dismissed the jury for the remainder of the day and determined that the ill juror, who complained of a “terrible headache” and “nausea,” would be replaced with one of the alternates if she was unable to attend the next day. The following morning, the trial judge telephoned the juror in counsel’s *157 presence, and the juror confirmed she was too sick to report. The court asked if either counsel had additional questions; neither did. The trial court determined that the ill juror could be replaced, and stated:
[TJhere’s nothing to say that this jury has made any actual fact findings or reached any determinations of guilt or innocence. And there’s ... nothing that would indicate that a new juror will not play a meaningful role in deliberations. There’s no partial verdict, nothing like that. No lengthy colloquy with any juror.
The trial court noted that after receiving the Czachor charge the jurors deliberated for “less than two hours,” before sending the note concerning the juror’s illness. The court further opined, “I believe there’s no problem substituting one of the alternates.” Neither counsel objected, and the reconstituted jury deliberated over the course of the following four days before announcing its verdict.
II.
This Court has stressed that the substitution of deliberating jurors should be rare and is to be discouraged. In State v. Hightower, we noted that
any conduct that could upset the process of jury deliberations, even judicial conduct such as juror substitution, must be carefully scrutinized.
Because juror substitution poses a clear potential for prejudicing the integrity of the jury’s deliberative process, it should be invoked only as a last resort to avoid the deplorable waste of time, effort, money, and judicial resources inherent in a mistrial.
[146 N.J. 239, 253-54, 680 A.2d 649 (1996).]
In State v. Corsaro, the Court held that a juror should not have been substituted after the jury returned a partial verdict, and noted the concern that
if the jury deliberates for an extended period of time, it will have progressed so far in its deliberations that it will have reached determinations. Hence, at that juncture, the substituted juror will not have “had the benefit of the deliberations of the other 11,” and may indeed be pressured by the amount of time the jury has deliberated and by the extent of their progress to conform to their findings and verdict.
[107 N.J. 339, 351, 526 A.2d 1046 (1987) (internal citations omitted).]
*158 In Corsaro, the Court quoted at length the Supreme Court of California in People v. Collins, 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742, 746 (1976), cert. denied, 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977), which highlighted the threat to the delicate balance of deliberations posed by juror substitution:
“The requirement that 12 person[s] reach a unanimous verdict is not met unless those 12 reach them consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11.” [Corsaro, supra, 107 N.J. at 349-50, 526 A.2d 1046 (quoting Collins, supra, 131 Cal.Rptr. 782, 552 P.2d at 746).]
Similarly, in Jenkins, supra, the Court reiterated that principles of judicial economy embodied in Rule 1:8 — 2(d)(1) sometimes must yield to the simple fact that deliberations had proceeded too long to expect that a reconstituted jury could commence its deliberations anew. 182 N.J. at 131-32, 861 A.2d 827.
III.
The issue of whether a reconstituted jury is capable of functioning in the mutual and collective manner required for a fair trial involves numerous issues of juror dynamics. There should be a legitimate concern that a newly introduced juror may not be able to fully participate, or participate in a fully informed manner, in the renewed deliberations. A new juror may feel pressure to conform to the views of jurors who have been considering the evidence for many hours or days. The original members of the jury may not be capable of starting their deliberations anew. Indeed, Justice Handler’s remarks in Czachor about the inherently coercive effect of that instruction apply with equal force here. He stated, “[t]here is rather equal cause to believe that a mind once bent in a particular direction is not easily straightened.” Czachor, supra, 82 N.J. at 401, 413 A.2d 593. These concerns implicate the fairness of the deliberative process. When the substitution follows a declaration of impasse, the introduction of a new member occurs at a time in the deliberations when the very declaration of an impasse communicates that at least one member *159 of the jury is at odds with the others. Such a circumstance adds to the concern that the integrity and even-handedness of the deliberative process will be compromised.
Judicial economy is a commendable goal. A trial court should never blithely declare a mistrial. Judicial economy concerns mount as the testimony consumes hours, days, or even weeks before the jury can commence its deliberations. Those concerns only increase as jury deliberations proceed over many hours and days. Those concerns, however, can never be the sole driver of the decision whether a juror may be substituted for another after the jury has declared it is deadlocked and the trial court has delivered an appropriate charge to continue deliberations.
Whether a reconstituted jury is able to begin its deliberations anew should be guided by objective principles. Here, the majority salvages this conviction by focusing on information gleaned from the record about what occurred before the jury resumed its deliberations and during the course of its deliberations. It also finds solace in the amount of time the reconstituted jury spent on its deliberations. To be sure, the record here strongly suggests that the reconstituted jury began its deliberations anew. The record also demonstrates that the renewed deliberations progressed over several days and the jury requested read-back of testimony different from the originally constituted jury. For me, however, the correct inquiry is not whether the reconstituted jury conscientiously discharged its duty to begin anew, but rather whether it was capable of doing so.
By focusing on the result, the majority fails to offer practical guidance for trial judges, prosecutors, and defense attorneys. Reliance on extrinsic evidence, such as post-substitution acts of the jury and the supposed course of deliberations, provides no guidance how trial courts and counsel should confront a similar issue in another case. Such reliance also ventures into the deliberative process, a foray this Court has always condemned. Jenkins, supra, 182 N.J. at 134, 861 A.2d 827; Czachor, supra, 82 N.J. at 400, 413 A.2d 593. Furthermore, the actions a reconstitut *160 ed jury will take, such as asking for new pads, taking posters off the wall in the jury room, or the length of time the newly constituted jury will deliberate, whether thirteen hours over four days, as here, or as little as one hour, as in Banks, are unknowable at the time the decision must be made. Adding to the uncertainty, this Court has reversed convictions when the newly constituted jury deliberates for a matter of minutes. Jenkins, supra, 182 N.J. at 116, 861 A.2d 827.
The majority insists that they are simply following the established approach that avoids adopting bright-line rules. Ante at 149, 93 A.3d at 750. However, case law demonstrates that bright-line rules do, in fact, exist. In Corsaro, supra, this Court determined that a juror should not be substituted after a jury returns a partial verdict, because the circumstances suggested that the jury had affirmatively reached a determination on one or more factual issues. 107 N.J. at 354, 526 A.2d 1046. In Jenkins and Hightower, this Court held that the jury should not be reconstituted when the substituted juror expressed a bias and may have tainted the panel. Jenkins, supra, 182 N.J. at 134-35, 861 A.2d 827; Hightower, supra, 146 N.J. at 255-56, 680 A.2d 649. Finally, in State v. Valenzuela, 136 N.J. 458, 473, 643 A.2d 582 (1994), this Court declared that a juror may not be excused and an alternate empanelled because a juror expresses disagreement with the views of the other jurors.
IV.
In this case, when the jury passed a note stating, “The jury was unable to reach a unanimous verdict on any count. What is your next instruction?” it is clear that a determination had occurred. We can assume in this circumstance that at least one juror could not agree with the views of the other jurors. A declaration of deadlock after four days also raises the spectre that some jurors may not be able to begin their deliberations anew. The risk that the deliberative process will be compromised is only heightened when the juror substitution occurs after delivery of the Czachor *161 instruction. I, therefore, respectfully dissent and would affirm the Appellate Division.
For reversal and remandment — Chief Justice RABNER, Justices LaVECCHIA, PATTERSON, FERNANDEZ-VINA and Judge RODRÍGUEZ (temporarily assigned) — 5.
For affirmance — Judge CUFF (temporarily assigned) — 1.
Not Participating — Justice ALBIN.