RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0410-15T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

 Plaintiff-Respondent,

v.

N.R.,

 Defendant-Appellant.

__________________________

IN THE MATTER OF J.S., M.L.,
JR., C.E., and K.E., minors.

________________________________________________________________
 Submitted April 4, 2017 – Decided August 18, 2017

 Before Judges Espinosa and Suter.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Gloucester
 County, Docket No. FN-08-77-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Norma Davis, Designated
 Counsel, on the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa H. Raksa,
 Assistant Attorney General, of counsel;
 Katrina A. Sansalone, Deputy Attorney General,
 on the brief).

PER CURIAM

 Defendant N.R. (Nancy)1 appeals from an adjudication of abuse

and neglect, N.J.S.A. 9:6-8.21, as to her four-year-old child,

M.L. (Moe). She argues there was insufficient evidence to support

this conclusion and the trial court erred in relying upon

documentary evidence to support its decision. We disagree and

affirm.

 I.

 Nancy is the mother of four children. In addition to Moe

(d.o.b. 11/21/90), she has J.S. (Jack) (d.o.b. 1/28/05), and twins,

C.E. and K.E. (Clark and Kim) (d.o.b. 9/2/14). M.L. (Mark) is

Moe's father; Jack's father is deceased and B.E. (Bob) is the

father of Clark and Kim.

 On October 7, 2014, the Division of Child Protection and

Permanency (the Division) was alerted to a domestic violence

incident between Nancy and Bob that occurred while the children

were present and resulted in Nancy being charged with simple

assault. Nancy admitted Jack witnessed the incident. However,

1 We use fictitious names to protect the privacy of the parties.

 2 A-0410-15T3
both Jack and Moe told the Division caseworker they saw Nancy and

Bob arguing and saw Bob break a window and go through it. Jack

reported seeing Bob choke Nancy. Moe told the caseworker Bob had

hurt Nancy "a lot of times."

 The Division instituted a Safety Protection Plan in which Bob

would not return to the home and was not permitted to have contact

with the children. Both Nancy and Bob agreed to the terms of the

plan.

 On October 14, 2014, the Division received a referral from a

Franklin Township police officer, reporting that Moe was observed

by a neighbor wandering around outside at approximately 9:15 a.m.,

alone and clad only in his underwear. The neighbor questioned

Moe, who stated no one was at home. Nancy and Bob returned to the

home ten minutes after they were contacted by police.

 The Division interviewed Nancy, who stated she ran to the

store while her mother, D.B. (Dina), was in the basement doing

laundry. Moe was sleeping at the time. Nancy stated Dina had

been staying at the home to help with the babies. She had arrived

and spent the night before at the home. She claimed Dina then

left around 10:30 a.m. to go to work. Nancy stated she did not

know how Bob got to the home, and thought he got a ride.

 3 A-0410-15T3
 When interviewed by the Division caseworker, Bob stated, "I

can't lie to you. [Dina] wasn't here. She is going to tell you

that she was here but she wasn't." He told the caseworker Nancy

had picked him up at the library and had only Clark and Kim in the

car. Bob also admitted to being in the home in violation of the

Safety Protection Plan.

 The Division also interviewed Moe and Jack. Moe had not seen

Dina that day. Jack also stated Dina did not spend the night

before at the home, and that he had not seen Dina the morning of

the incident.

 Dina told the Division caseworker she was at the home that

morning. She stated Moe was sleeping when she went into the

basement to do laundry. She was in the basement for approximately

fifteen minutes when her boss called to say she had to come to

work. Bob and Nancy returned home, so Dina left at approximately

10:30-10:45 a.m. Dina reported she had a friend pick her up from

Nancy's house but declined to disclose the name of her friend.

Dina stated she had briefly interacted with Moe after Nancy

returned home, and denied seeing the police outside of the home.

The caseworker told Dina her timeline did not make sense, as Moe

was outside at approximately 9:15 a.m., not 10:15 a.m. Dina later

 4 A-0410-15T3
called the Division caseworker to say she got the time wrong and

she was in the basement at 9:15 a.m., not 10:15 a.m.

 The Division caseworker checked Nancy's call history, which

showed Nancy called Dina at 10:56 a.m., and made six more calls

thereafter to her phone.

 After determining Nancy had left Moe home alone, the Division

conducted an emergency removal of the four children pursuant to

N.J.S.A. 9:6-8.29 and 9:6-8.30. The Division also determined Nancy

and Bob had violated the Safety Protection Plan that prohibited

Bob from being in the home.2

 A Safety Protection Plan was instituted for Moe, who was taken

to Mark's house. Jack, Clark, and Kim were placed in resource

care with the maternal grandfather and step-grandmother. The

following day, the Division interviewed the neighbor who called

the police about Moe. She reported she had gone outside around

9:15 a.m. and saw Moe outside wearing only a t-shirt and underwear.

Moe told her Nancy was not home, and the neighbor stayed outside

with him for approximately fifteen minutes. Nancy then returned

home with Bob driving the car, and Nancy told Moe that Dina was in

the basement. Nancy took Moe inside and dressed him, and then

2 The trial judge found this allegation did not rise to the level
of a Title 9 finding.

 5 A-0410-15T3
they all left. The neighbor stated she stayed outside out of

curiosity and never saw Dina leave or any cars pick her up.

 On October 15, 2014, the Division filed a complaint for the

care and supervision of Moe, and for the custody, care, and

supervision of the three other children.

 A hearing was held on October 16, 2014, at which Nancy, Mark,

Dina and a Division caseworker testified. The caseworker, Michelle

Leyman, who responded to the home following the referral, recounted

her interviews with Nancy, Dina, Bob, Moe, and the neighbor who

called the police. Moe told her when "he woke up, he looked in

several of the rooms of the house. No[]one was home. He went

outside. He said at no time did he see his . . . maternal

grandmother. And then, his mom came home in the yard."

 Nancy testified Moe woke up early and was sick. She put him

back to sleep. Her mother was present when she left to do an

errand, taking the twins with her. When she returned, Moe was in

the yard and her neighbor scolded her, saying, "What are you doing?

Nobody's here. [Moe] was looking for you. He came outside."

Nancy explained that her mother had come late the previous night

and neither Moe nor Jack knew she was there. Nancy said she went

into the house and told her mother Moe was outside. She said Dina

 6 A-0410-15T3
had been in the basement doing laundry and was still there when

Nancy returned.

 Dina provided testimony that was largely corroborative of

Nancy's version of events. Mark, a non-dispositional defendant,

was present and advised the court he had filed for custody of Moe.

 The trial judge acknowledged there was "a lot of conflicting

testimony" but resolved that conflict by finding, "[Moe] was left

unattended." He concluded "the Division has made its case with

regard to removing the children," and issued an order placing Moe

in the care and supervision of the Division and the three other

children under the custody, care, and supervision of the

Division. An order to show cause why the children should not

continue under the custody, care, and supervision of the Division

was entered. That order was continued; a preliminary fact-

finding hearing was held on March 6, 2015, and the fact-finding

hearing was held on April 17, 2015.

 At the outset of the fact-finding hearing conducted on April

17, 2015, the Deputy Attorney General advised the court there was

an agreement as to several exhibits: an Investigation Summary dated

October 7, 2014; an Investigation Summary dated October 14,

 7 A-0410-15T3
2014; and four Safety Protection Plans, and stated further that

"the Division will rest on the papers." Nancy's attorney consented

to the admission of those exhibits into evidence.

 The trial judge reviewed the documentary evidence, noting it

had been admitted without objection. He cited specific statements

in the documentary evidence, including the following.

 The neighbor, who observed Moe standing outside in his

underwear on October 14, 2014, asked Moe, "Are you all right,

Honey?" He replied, "Mommy's not here," and "[Bob] took mommy to

work." She stated she asked if he had checked the bedrooms and

bathrooms and stayed with Moe until Nancy and Bob returned

approximately fifteen minutes later. She remained outside to

continue her observation and stated at no time did she see the

maternal grandmother leave the house on October 14, 2014.

 Bob admitted that Nancy picked him up that morning on October

14, 2014, and had the twins in the car. He stated Nancy's mother

was not at home. Bob "couldn't believe [Nancy] left [Moe] home

alone," stating, "She's messed up."

 Dina stated she was in the basement doing laundry for about

fifteen minutes at the time that Moe wandered outside and left for

work at about 10:30-10:45 a.m. that morning. Although she said

 8 A-0410-15T3
she had interacted with Moe that morning, she could not recall

what she said to him.

 Nancy denied leaving Moe home alone on October 14, 2014,

maintaining her mother was there.

 Jack reported he did not see Dina the prior night or in the

morning before he got on the bus for school at about 7:52 a.m.

 Moe stated he did not find anyone in the house when he woke

up and he was scared. He did not see his grandmother the prior

evening or at all that morning. He also said Bob had been in the

home over the weekend.

 The trial judge noted inconsistencies in Dina's statements

and found Nancy's account not credible in light of the statements

from Bob, Jack and Moe. He concluded the Division had proven by

a preponderance of the evidence that four-year-old Moe was left

alone unattended, warranting an adjudication of abuse and neglect

under N.J.S.A. 9:6-8.21.

 In her appeal, Nancy argues the Division failed to prove

neglect because her conduct was not grossly or wantonly negligent

and did not constitute a failure to exercise a minimum degree of

care, and because the record fails to show that Moe was at a

substantial risk of harm. She further argues the trial judge erred

in relying exclusively upon documentary evidence.

 9 A-0410-15T3
 II.

 To support a finding of abuse and neglect, the Division must

prove by a preponderance of "competent, material and relevant

evidence," N.J.S.A. 9:6-8.46(b), that the parent failed

 to exercise a minimum degree of care . . . in
 providing the child with proper supervision or
 guardianship, by unreasonably inflicting or
 allowing to be inflicted harm, or substantial
 risk thereof, including the infliction of
 excessive corporal punishment; or by any other
 acts of a similarly serious nature requiring
 the aid of the court.

 [N.J.S.A. 9:6-8.21(c)(4)(b).]

 A parent fails to exercise a "minimum degree of care" when

the parent engages in "conduct that is grossly or wantonly

negligent, but not necessarily intentional." N.J. Div. of Youth

& Family Servs. v. T.B., 207 N.J. 294, 305 (2011) (emphasis added)

(quoting G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161,

178 (1999)). Such misconduct occurs when "an ordinary reasonable

person would understand that a situation poses dangerous risks and

acts without regard for the potentially serious consequences." Id.

at 306 (quoting G.S., supra, 157 N.J. at 179). Each case of

alleged abuse "requires careful, individual scrutiny" and is

"generally fact sensitive." N.J. Div. of Youth & Family Servs.

 10 A-0410-15T3
v. P.W.R., 205 N.J. 17, 33 (2011). We accord deference to the trial

judge's findings of fact "unless . . . they went so wide of the

mark that the judge was clearly mistaken." N.J. Div. of Youth &

Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

 The Supreme Court has noted that "[l]eaving a child unattended

in a car or a house is negligent conduct. N.J. Div. of Child Prot.

& Permanency v. E.D.-O., 223 N.J. 166, 170 (2015); G.S., supra,

157 N.J. at 180-181 ("For example, if a parent left a twoyear old

child alone in a house and went shopping, the child would be

considered a neglected child within the meaning of Title 9. . .

."). Whether such "conduct is negligent or grossly negligent

requires an evaluation of the totality of the circumstances."

E.D.-O., supra, 223 N.J. at 170.

 Nancy's argument that the proofs are insufficient rely upon

the premise that she believed her mother was present when she left

Moe home, and therefore, her lapse was only negligence and did not

rise to the level of grossly or wantonly negligent conduct

necessary to sustain a finding of neglect. She relies for support

upon T.B., supra, in which a mother and her four-year-old son lived

in an in-law suite in her parents' home. 207 N.J. at 296. One

evening, the mother put the child to bed and went out for dinner,

believing her mother was at home because her car was in the

 11 A-0410-15T3
driveway, she had been ill, and she was "always home" on Sunday

nights. Id. at 297. Unbeknownst to the mother, the grandmother

had "made an impromptu decision to go" to New York with her husband.

Ibid. The child woke up, discovered he was alone in the home and

crossed a busy street to go to a neighbor's home. Ibid. Calling

it a "close case," the Court noted, "[t]his is not a situation in

which [the mother] left her four-year-old son at home alone knowing

there was no adult supervision." Id. at 309. Although the mother's

failure to confirm her mother's presence before leaving "was

clearly negligent," the Court concluded "it did not rise to the

level of gross negligence or recklessness." Id. at 310.

 Nancy was well aware her assertion that her mother was home

was refuted by Bob, both Moe and Jack, and her neighbor, and that

the trial judge had earlier rejected her testimony in finding Moe

had been left alone. Ordinarily, a trial judge should not make

findings of fact based upon conflicting statements without the

benefit of testimony. See Gilhooley v. Cty. of Union, 164 N.J.

533, 545 (2000). But here, Nancy was present at the fact-finding

hearing, available to testify and, yet, waived the right to

challenge these opposing versions of events by consenting to the

admission of documentary evidence without testimony. As a result,

she is precluded from claiming the trial judge erred in relying

 12 A-0410-15T3
upon documentary evidence. See State v. A.R., 213 N.J. 542, 561

(2013) (holding "trial errors that 'were induced, encouraged or

acquiesced in or consented to by defense counsel ordinarily are

not a basis for reversal on appeal.'" (quoting State v. Corsaro,

107 N.J. 339, 345 (1987)). It follows that Nancy cannot now

complain the evidence was insufficient based upon the version of

the facts she gave – that had been rejected by the trial judge and

was refuted by the statements of other witnesses.

 The facts as found by the trial judge are supported by

evidence in the record. For T.B. to lend any support for her

argument, Nancy had to have a reasonable belief that she was not

leaving four-year-old Moe at home unattended. The trial judge did

not find that to be the case. As a result, T.B. provides no

support for her argument.

 As the Court found in E.D.-O., supra, 223 N.J., at 170,

leaving a child alone constitutes negligence. The next inquiry is

whether the circumstances support a finding "of gross negligence

or recklessness." T.B., supra, 207 N.J. at 310.

 The trial judge found the following "aggravating

circumstances" present here: Nancy knew the lock on the front door

was not working properly, allowing Moe to leave the house without

adult assistance; at four years old, Moe did not know how to call

 13 A-0410-15T3
anyone or do anything and was left without any messages; although

Moe was not injured when he wandered outside, there was "certainly"

a "possibility of injury."

 The trial judge's findings have ample support in the record

and provide a sufficient basis for the adjudication of neglect

under N.J.S.A. 9:6-8.21.

 Affirmed.

 14 A-0410-15T3