**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0032-19

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

SHAREEM I. BRANTLEY,

 Defendant-Appellant.

_____

> Argued January 11, 2022 – Decided February 10, 2022
>
> Before Judges Messano and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-06-0796 and 15-06-0800.
>
> James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).
>
> Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

A Middlesex County grand jury returned an indictment charging defendant Shareem Brantley and co-defendant Sameeka Seawright with first-degree maintaining or operating a controlled dangerous substance (CDS) production facility for "heroin and/or cocaine," N.J.S.A. 2C:35-4 (count one); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1) (count two); second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1) (count three); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (count four); third-degree possession with intent to distribute cocaine, N.J.S.A. 2C:35-5(a)(1) (count five); third-degree possession of oxycodone, N.J.S.A. 2C:35-10(a)(1) (count six); fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3 (count seven); second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1(a) (count eight); second-degree unlawful possession of a handgun without first having obtained a permit to carry, N.J.S.A. 2C:39-5(b) (count nine); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count ten); third-degree receiving stolen property, a .380 handgun, N.J.S.A. 2C:20-7 (count eleven); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count twelve). Defendant was also charged with

2

possession of a firearm by a certain person previously convicted of a crime, N.J.S.A. 2C:39-7(b), in a separate indictment.

Seawright pled guilty and testified as a State's witness at defendant's trial, which ended in a mistrial when the jury could not reach a unanimous verdict. By the start of defendant's second trial, the State had dismissed counts two, three, and six, and amended count one to remove any reference to heroin. Seawright again testified at the second trial, and the State produced additional evidence which we need not recount given the issue raised on appeal.

The jury began its deliberations on February 19, 2019, and deliberated from 9:41 a.m. to 4:29 p.m., with the playback of some testimony during this time. After deliberating for approximately two hours the following morning, the jury sent the judge the following note:

> Count [one] – in agreement
> Count [twelve] – in agreement
>
> Count [four], [five], [seven], [eight], [nine], [ten], [eleven]
>
> Dear Judge,
> Above is the jury [s]tatus as of now. We are stuck on making a[] unanimous decision for [c]ounts [four], [five], [seven], [eight], [nine], [ten], [eleven].

The prosecutor urged the judge to provide the "further deliberation" charge, stating, "[a]nd if we receive something else and they indicate that they want to

A-0032-19

proceed on the partial verdict, at that point the [c]ourt should give them the next charge." Defense counsel argued the jurors had deliberated long enough and asked the court to give the "partial verdict" charge. The judge decided to provide Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 14, 2013), and told the jury to continue its deliberations.

The jury resumed deliberations from 11:09 a.m. to 12:33 p.m., at which point a juror sent out a note advising that his wife was having surgery the following day. Before the judge decided whether to excuse the juror, defense counsel said, "we've got a deliberating juror who has already reached a partial verdict. I'm asking that you don't let him go and let's take the partial verdict right now and be done with it." The prosecutor initially argued the judge should instruct the jury to continue deliberations because it had not stated deliberations were deadlocked.

Defense counsel again asked the judge to take a partial verdict, but the judge chose to dismiss the juror over defense counsel's objection. He sent the eleven remaining deliberating jurors home for the day at 12:41 p.m. because the courthouse was closing due to inclement weather.

A-0032-19

The judge selected an alternate juror to replace the excused juror the next morning. He told jurors they must "start [their] deliberations all over again" and provided jury instructions that generally tracked Model Jury Charges (Criminal), "Judge's Instructions When Alternate Juror Empaneled After Deliberations Have Begun," (rev. Mar. 14, 2016).

The reconstituted jury deliberated from approximately 9:22 a.m. to 3:15 p.m., before sending the judge another note:

> Dear Judge,
>
> The jury has voted as follows:
>
> Count [one] – unanimous
> Count [eleven] – unanimous
>
> The rest of the counts are not in agreement.
>
> We have worked hard at trying to come together for an agreement by reviewing the evidence and each person[']s position.
> We do not believe that additional time will not [sic] change anyone[']s position.

The judge noted the difference between the note received on February 20, 2019, and this note, specifically that the jury now reached a unanimous verdict on count eleven and now was unable to do so on count twelve. He provided jurors with instructions pursuant to Model Jury Charges (Criminal), "Partial

5

A-0032-19

Verdicts," (approved June 10, 2013).  They returned to the jury room and sent out another note:

> Dear Judge,
>
> The jury agreed unanimously on
> Count [one] – [u]nanimous
> Count [eleven] – [u]nanimous
>
> The jury agreed to render a partial verdict as final.

The jury found defendant guilty of count one, not guilty of count eleven, and could not reach a unanimous verdict on the remaining counts.

The judge subsequently denied defendant's motion for a new trial and granted the State's motion to impose an extended term of imprisonment pursuant to N.J.S.A. 2C:43-6(f).  He sentenced defendant to twelve years in prison with a six-year period of parole ineligibility.  The prosecutor dismissed those counts in the indictment for which the jury could not reach a unanimous verdict.[1]

Defendant now appeals, raising the following single point:

POINT I

---

[1] This sentence is in the range of ordinary terms for a first-degree offense, and the record fails to explain why the court did not impose an extended term sentence after granting the prosecutor's motion.  Defendant subsequently pled guilty to the "certain persons" offense in the second indictment and was sentenced to a concurrent five-year term of imprisonment with a five-year period of parole ineligibility.

A-0032-19

THE DEFENDANT'S RIGHT TO A UNANIMOUS JURY WAS VIOLATED WHEN THE JUDGE REPLACED A SITTING JUROR AFTER THE JURY HAD REACHED A PARTIAL VERDICT.[2]

We agree that the Court's per curiam opinion in State v. Horton, 242 N.J. 428 (2020), controls disposition of this appeal and compels us to reverse defendant's conviction.

In Horton, the Court framed the issue before it, which was remarkably like the facts presented here:

> This appeal comes before the Court to consider the actions of the trial court in excusing and replacing a juror who had a preplanned vacation and who had been part of deliberations. Just before the substitution, all the jurors, including the juror with the preplanned vacation, announced that they had reached a partial verdict. The judge did not have the jury return a partial verdict. Instead, the court excused the juror and reconstituted the jury with a replacement juror.
>
> [Id. at 430.]

After the judge denied the defendant's motion for a mistrial, and his request to voir dire the jury, the judge provided instructions telling the reconstituted jury to begin deliberations anew. Ibid. The jury reached a unanimous verdict three days later. Ibid.

---

[2] We have omitted the subpoints contained in defendant's brief.

A-0032-19

We affirmed the defendant's conviction, "speculating that the substituted juror was a 'full participant[] in the mutual exchange of ideas[,]'" and noting "the reconstituted jury requested transcripts, asked for testimony to be played back, and asked additional questions before returning a verdict three days later." Ibid. (first alteration in original). The Court disagreed and stated a bright line standard trial courts must apply in such circumstances:

> We have rich and fulsome jurisprudence on the issue of juror substitution in the face of a jury having reached a partial verdict. Quite simply, substitution is impermissible. The proper course is for the trial court to take the partial verdict and declare a mistrial on the open counts.
>
> [Ibid. (emphasis added).]

Horton was decided after the trial here, but the Court cited two examples of the existing "rich and fulsome jurisprudence," State v. Corsaro, 107 N.J. 339 (1987), and State v. Ross, 218 N.J. 130 (2014). Id. at 430–31. Although the facts in Corsaro and Ross are somewhat different than the facts presented here and in Horton, the bright line standard prohibiting juror substitution after the jury reaches a partial verdict remains the same.

In Corsaro, the jury had returned a partial verdict before the juror substitution. 107 N.J. at 341–45. The Court held "that substitution of a juror

after the return of partial verdicts for the purpose of continuing deliberations in order to reach final verdicts on remaining counts was plain error." Id. at 354.

In Ross, the Court substituted a juror after the jury reached an impasse but had not indicated it reached a partial verdict. 218 N.J. at 145–46. The Court found this distinction critical, explaining: "when the circumstances suggest a strong inference that the jury has affirmatively reached a determination on one or more factual or legal issues, the trial court should not substitute an alternate for an excused juror." Id. at 151 (emphasis added) (citing Corsaro, 107 N.J. at 354). In Ross, the Court concluded it was not reversible error to substitute a juror after the panel expressed an impasse but had not indicated it reached a partial verdict. Id. at 154–55.

The Court explained the rationale for a bright line standard in Corsaro:

> The requirement that juries begin deliberations anew after a juror has been substituted would be rendered nugatory if the reconstituted jury is likely to accept, as conclusively established, facts that could underlie, if not necessarily establish, its verdict on the open charges. While the jury was not technically required to accept the facts underlying the partial verdict, the likelihood that deliberations would truly "begin anew" was so remote, in our opinion, as to foreclose juror substitution.
>
> [107 N.J. at 354.]

The State contends <u>Corsaro</u>'s concern about the inability of a reconstituted jury to begin deliberations anew was disproven in this case, because after the judge substituted the juror, the reconstituted jury changed votes, as indicated by the original jury on counts eleven and twelve.

Perhaps the reconstituted jury's verdict as to two counts, seemingly different from the original jury's determination, is significant, as the State contends. But, any distinction between the two partial verdicts fails to convince us we should affirm defendant's conviction on count one. Courts have historically refused to look behind the jury's verdict to divine what took place inside the jury room. <u>See, e.g.</u>, <u>State v. Crisantos</u>, 102 N.J. 265, 272 (1986) (noting a "criminal jury may return 'a verdict of innocence in the face of overwhelming evidence of guilt,' or it may return illogical or inconsistent verdicts that would not be tolerated in civil trials." (first quoting <u>State v. Ingenito</u>, 87 N.J. 204, 212 (1981), then citing <u>United State v. Powell</u>, 469 U.S. 57, 63–69 (1984))). We refuse to do so in this case. We know both the original jury and the reconstituted jury reached unanimous verdicts on count one, and that the reconstituted jury's verdict was guilty; but we do not know and should not guess that the originally constituted jury's unanimous verdict was also a guilty verdict.

A-0032-19

Lastly, in a variety of specific instances, the Court has recognized the sanctity of the jury's deliberative process and constitutional implications involved when the court substitutes a juror after deliberations commence. See, e.g., State v. Jenkins, 182 N.J. 112, 126 (2004) ("Inasmuch as the essence of jury deliberations is a collective sharing of views, reconstituting a jury in the midst of deliberations 'can destroy the mutuality of those deliberations.'" (quoting State v. Williams, 171 N.J. 151, 163 (2002))). Considering the Court's clear guidance, we cannot permit defendant's conviction to stand simply because of the verdict rendered after the juror substitution when substitution should not have occurred in the first instance.

Reversed and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0032-19