**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4211-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DONALD EASTERLING,

     Defendant-Appellant.

_____

Submitted January 10, 2019 – Decided August 16, 2019

Before Judges O'Connor, Whipple and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 15-04-0865 and 15-04-0866.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Donald Easterling appeals from judgments of conviction of robbery, aggravated assault, and related weapons charges, as well as the sentence imposed for those convictions. We vacate defendant's conviction on one count, affirm his remaining convictions, and remand for merger of his convictions on two counts, and resentencing.

I.

On July 30, 2014, defendant, armed with a handgun, robbed several people in a 99-cent store in Newark. After entering the store with his gun cocked and loaded, defendant ordered the store owner and two others to get on the floor. He pointed his gun at the store owner's head when he refused to get on the floor and demanded that his victims empty their pockets. One victim threw his watch, money, and a fanny pack on the floor, which defendant scooped up. Defendant thereafter headed toward the front door. A fourth person in the store realized defendant did not detect his presence. He quietly climbed through a window and escaped, locking the door as he exited, and trapping defendant in the store. Once outside, he flagged down a patrol car that was passing through the neighborhood and reported the robbery to a police officer.

A-4211-16T4

The officer approached the store with his gun drawn. Seeing through the glass door that defendant was armed and heading to the door, the officer fired twice. He got a clear look at defendant and identified him at trial. A second officer arrived at about the same time. Although he saw a figure with a gun in the store, he could not identify defendant at trial.

Noticing that defendant, who appeared high on drugs, was wounded from the officer's gunfire, the three people in the store grabbed defendant and began to tussle with him. They jumped on defendant, kicked him, fought him, and one threw a "radiator" at him. The three eventually dragged defendant to the front of the store, stomped on him, and threw him to the floor, face down, with the gun underneath him.

A second officer, who was nearby when he heard radio transmissions reporting the robbery, responded to the scene. He saw the first officer pointing his gun at the store and yelling "show me your hands, drop the gun." He also observed defendant on the floor of the store with three men on top of him and assumed defendant was being robbed. He saw the three men cause defendant's head to slam against the front door of the store, cracking the glass. At that point, the officer was within arms' reach of defendant and made eye contact with him. He heard a bang, saw "muzzle fire," and realized defendant had shot him in the

3

knee through the glass door. A third officer arrived just after the shot was fired. He carried the wounded officer from the scene, securing him behind a police vehicle. He was later transported to a trauma center. Although the wounded officer survived the shooting, he was unable to return to work because of his injuries, experiences mobility limitations, and must wear a leg brace. At trial, the wounded officer identified defendant as the man who shot him.

Additional officers arrived, broke through the door, entered the store, and arrested defendant. He was removed from the floor, where officers found a Glock handgun. Because he had been shot, defendant was taken to a trauma center for treatment. Among the items recovered at the robbery was a fanny pack containing $280 in cash (the store owner claimed it was between $600 and $700 in cash) from the rear of the store, and a small cup with baggies of marijuana inside it near the cash register.

A grand jury indicted defendant charging him with: first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) (count one); second-degree aggravated assault; N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault of a law enforcement officer performing his duties resulting in bodily injuries, N.J.S.A. 2C:12-1(b)(5)(a) (count three); three counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts four, five, and six); second-degree unlawful

possession of a weapon, N.J.S.A. 2C:39-5(b) (count seven); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eight); fourth-degree aggravated assault on a law enforcement officer in the performance of his duties not resulting in bodily injury, N.J.S.A. 2C:12-1(b)(5)(a) (count nine); fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4) (count ten); and fourth-degree possession of prohibited ammunition, a high-capacity magazine, N.J.S.A. 2C:39-3(j) (count eleven). The grand jury also charged defendant in a separate indictment with a single count of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

At trial, defendant testified that he was an innocent, unarmed bystander in the store who was attacked by the store owner and his associates, who were selling marijuana at the front counter. Defendant testified that he was struggling to get away from the men who were assaulting him when he was shot. He argued that the Glock handgun found at the store belonged to the store owner, who presumably used the weapon to protect his drug sales operation.

Following a jury trial, count nine of the indictment was dismissed. The jury found defendant guilty of second-degree aggravated assault (count two); third-degree aggravated assault (count three), two counts of first-degree robbery (counts four and five), and the three weapons charges (counts seven, eight, and

eleven). The jury acquitted defendant of attempted murder (count one), fourth-degree aggravated assault (count ten), and one count of robbery (count six). Immediately after the jury returned its verdict, defendant entered a guilty plea to the certain-persons charge, contingent on his other convictions being upheld on appeal.

The court sentenced defendant on both indictments to an aggregate extended term of forty-five years of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court imposed the forty-five-year term on count five, the first-degree robbery of the store owner, with the terms of incarceration on all other counts to run concurrent with that sentence. The extended term was mandated by N.J.S.A. 2C:44-3(d), because defendant had a prior conviction for robbery during which he used a gun. The court also imposed statutory fees and penalties.

This appeal followed. Defendant makes the following arguments for our consideration:

> POINT I
>
> THE JURY INSTRUCTION ON ROBBERY FAILED TO TELL THE JURY HOW THE CHARGED BURDEN OF PROOF PERTAINED TO ANSWERING THE "YES/NO" QUESTION THAT WAS POSED: "IN THE COURSE OF COMMITTING THE ROBBERY DID THE DEFENDANT USE,

THREATEN THE IMMEDIATE USE OF, OR WAS HE ARMED WITH A DEADLY WEAPON?"  THE INSTRUCTION ALSO CONFUSINGLY TOLD THE JURY TO RETURN A VERDICT OF GUILTY ON THE CRIME OF "ROBBERY" NO MATTER WHAT ITS ANSWER WAS TO THAT QUESTION.  (NOT RAISED BELOW).

POINT II

THE TRIAL JUDGE SHOULD HAVE CONDUCTED INDIVIDUAL VOIR DIRE OF THE ENTIRE JURY ONCE IT WAS BROUGHT TO HER ATTENTION DURING THE TRIAL THAT A JUROR NOT ONLY NEEDED TO BE EXCUSED FROM THE JURY BECAUSE THE JUROR KNEW A POSSIBLE STATE WITNESS, BUT THAT THE JUROR HAD SPOKEN TO OTHER JURORS ABOUT HER FAMILIARITY WITH THE WITNESS; EXCUSING THE JUROR WAS AN INSUFFICIENT REMEDY UNDER THE CIRCUMSTANCES.  (NOT RAISED BELOW).

POINT III

DEFENDANT SHOULD NOT BE SEPARATELY CONVICTED OF ROBBERY OF A STORE – THERE IS NO SUCH CRIME – AND OF ROBBERY OF ONE OF THE PEOPLE WORKING IN THE STORE; THE FORMER CONVICTION SHOULD BE VACATED (OR MERGED); ADDITIONALLY, THE TWO CONVICTIONS FOR WHAT WAS A SINGLE AGGRAVATED ASSAULT UPON OFFICER DOMINGUEZ SHOULD ALSO MERGE.  (NOT RAISED BELOW).

7

POINT IV

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE; THE SAME OFFENSE THAT TRIGGERED THE EXTENDED TERM WAS DOUBLE-COUNTED AGAINST DEFENDANT IN SETTING THE LENGTH OF THAT TERM.

In a supplemental pro se brief, defendant makes the following argument for our consideration:

POINT I

THE STATE ERRED IN ALLOWING FALSE AND PREJUDICIAL STATEMENTS DURING TRIAL OF DEFENDANT DONALD EASTERLING WHEN STATE WITNESS LLOYD DANBY TESTIFIED THAT DEFENDANT HAD POINTED A GUN AT HIS HEAD THEN COCKED THE TRIGGER.

II.

We address first defendant's argument with respect to the jury charge. Although defendant agreed to the jury instructions given at trial, he argues for the first time on appeal that the court did not sufficiently instruct the jury on the elements of first- and second-degree robbery.

N.J.S.A. 2C:15-1 sets forth the elements of robbery. The statute provides:

a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2)    Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3)    Commits or threatens to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

b.    Grading.    Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

[N.J.S.A. 2C:15-1.]

The court instructed the jury that it could find defendant guilty of robbery, without mentioning a degree, if it found beyond a reasonable doubt that (1) in the course of a theft (2) defendant threatened another with or purposely put another in fear of immediate bodily injury.  The court proceeded to define the terms: theft, purposely, bodily injury, force, and knowingly.

Before explaining the deadly weapon element, the court called counsel to side bar and asked whether the robbery charge should specifically note that there are two degrees of robbery, and that the deadly weapon element elevates robbery to a first-degree crime.  The court stated "you never say degree in the charges."

9

Defense counsel stated that she wished to continue with the agreed-upon instructions, and did not want the different degrees of robbery mentioned to the jury.

The court then instructed the jury that "the State must prove beyond a reasonable doubt that the defendant was armed with or used or threatened the immediate use of a deadly weapon while in the course of committing the robbery." This describes the elements of first-degree robbery, but the court did not mention the degree or a lower degree of robbery than was encompassed in the first instruction.

The court instructed the jurors that if they had a reasonable doubt about either of the "elements" of "robbery as I have defined that crime to you," they must acquit defendant of that crime. The court appears to have been referring to second-degree robbery. The court then instructed the jurors that if they believed the State had proven the "crime of robbery" beyond a reasonable doubt, but did not prove beyond a reasonable doubt that defendant was armed with or threatened the use of a weapon, they "must find the defendant guilty of robbery." Again, it appears the court was referring to second-degree robbery. The court then instructed the jury that if they found defendant "committed the crime of

robbery and was armed with a deadly weapon," they must "find the defendant guilty of robbery." Apparently, the court was referring to first-degree robbery.

The court then reviewed the verdict sheet with the jury. With respect to robbery, the verdict sheet provided:

> On July 30th, 2014, in the City of Newark, defendant Donald Easterling in the course of committing a theft upon 99 cent zone, did inflict bodily injury or use force against [specified victim] or did threaten [specified victim] with, or purposely put him in fear of immediate bodily injury. We find the defendant:
>
> NOT GUILTY _____     GUILTY _____
>
> If you find the defendant "GUILTY" of Robbery, please answer the following question.
>
> In the course of committing the Robbery did the defendant use, threaten the immediate use of, or was he armed with a deadly weapon?
>
> NO _____     YES _____

The court instructed the jury that if it found defendant was guilty of robbery, it must then answer the question regarding the deadly weapon.

It is well-settled that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Concepcion, 111 N.J. 373, 379 (1988). However, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge

11

was not error and was unlikely to prejudice the defendant's case."  State v.

Singleton, 211 N.J. 157, 182 (2012).  Therefore, "the failure to object to a jury

instruction requires review under the plain error standard."  State v. Wakefield,

190 N.J. 397, 473 (2007).

> As applied to a jury instruction, plain error requires demonstration of "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result."
>
> [State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).]

The mere possibility of an unjust result is not enough to warrant reversal of a

conviction.  State v. Jordon, 147 N.J. 409, 422 (1997).  "The error must be

considered in light of the entire charge and must be evaluated in light 'of the

overall strength of the State's case.'"  State v. Walker, 203 N.J. 73, 90 (2010)

(quoting Chapland, 187 N.J. at 289).

"[W]e must read the charge as a whole."  State v. Townsend, 186 N.J. 473,

499 (2006).  "[T]he prejudicial effect of an omitted instruction must be evaluated

in light of the totality of the circumstances including all of the instructions to

the jury, [and] the arguments of counsel."  Ibid. (alteration in original) (quoting

State v. Marshall, 123 N.J. 1, 145 (1991)).  A defendant is entitled to a charge

12

that is "accurate and that does not, on the whole, contain prejudicial error." State v. Labrutto, 114 N.J. 187, 204 (1989). "The test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App. Div. 1997)). "The verdict sheet, in conjunction with the jury charges, constitutes the trial court's direction to the jury." State v. Galicia, 210 N.J. 364, 386 (2012). "[A] jury charge is a road map to guide the jury," and "[a] verdict sheet is an essential component of that road map." Id. at 386-87.

In addition, the flaws in the instructions that defendant challenges were brought to defense counsel's attention by the court. Defendant's counsel dismissed the court's concerns and stated that the instructions were acceptable. A party cannot profit from an error which he "induced, encouraged or acquiesced in, or consented to by defense counsel . . . ." State v. Van Syoc, 235 N.J. Super. 463, 465 (Law Div. 1988), aff'd, 235 N.J. Super. 409 (App. Div. 1989). Under the invited error doctrine, encouraged errors "ordinarily are not a basis for reversal on appeal . . . ." State v. A.R., 213 N.J. 542, 561 (2013) (quoting State v. Corsaro, 107 N.J. 339, 345 (1987)). "The doctrine is implicated 'when a defendant in some way has led the court into error[.]'" Id. at 562 (quoting State

A-4211-16T4

v. Jenkins, 178 N.J. 347, 359 (2004)).  It applies "in a wide variety of situations." Ibid. (quoting N.J. Div. of Youth & Family Servs. v. M.C., 201 N.J. 328, 340-41 (2010)).

Although defendant's argument is subject to the invited error doctrine, in the interests of justice we review the jury instructions for plain error.  We are satisfied that the court clearly explained to the jury the elements of robbery and the State's obligation to prove those elements beyond a reasonable doubt.  In addition, the court adequately instructed the jury with respect to the State's obligation to prove that defendant used or threatened the use of force, or was armed with a deadly weapon.  While the court did not differentiate the two degrees of robbery in its instructions or on the verdict sheet, the court instructed the jury of its obligation to make a separate conclusion with respect to the weapons element of first-degree robbery, and the verdict sheet presented the question of whether the State proved this element as a separate inquiry to be determined by the jury only if it previously found defendant guilty of robbery.

In addition, when viewed against the strength of the State's proofs, which included eyewitness identification of defendant in possession of and using a handgun, we do not see the alleged lack of precision in the jury instructions as possessing a clear capacity to bring about an unjust result.  This is particularly

14

true in light of defendant's position at trial that he was the innocent victim of an assault by the store owner and his associates. He did not argue that he robbed the store owner and the others while unarmed. He therefore did not argue a version of events constituting second-degree robbery. The jury clearly rejected defendant's testimony, and instead found more credible the State's evidence that defendant robbed the people in the store while armed with a handgun.

III.

Quaree Jones was one of the men in the store at the time of the robbery. Because of an oversight, his name was not on the list of proposed witnesses that was read to the array during the jury selection process. During the testimony of another witness, Jones's name was mentioned. Also during that testimony, a juror accidentally cut himself. A court officer went into the jury room to check on the juror's condition. Juror No. 14 called out to the officer and told him, in front of the other jurors, that she recognized the name Quaree Jones. The officer told the juror to stop talking and reported the conversation to the judge.

The court questioned Juror No. 14 outside of the presence of the other jurors. Juror No. 14 stated that Jones had been in a relationship with her daughter's grandmother "years ago" but that she had not seen him in years. Juror No. 14 stated that knowing Jones would not interfere with her ability to be fair

15

and impartial. She acknowledged that she asked other jurors if they had seen Jones's name on the witness list, because she thought she may have overlooked it, and told them that she needed to inform the court that she knew Jones. The court excused Juror No. 14.

When asked by the court, both defense counsel and the State agreed that there was no need to question the other jurors about the incident. They expressed concern that further questioning would highlight Jones unnecessarily, given that Juror No. 14 did not convey any information about him to them. Defendant argues for the first time on appeal that the trial court erred by not questioning the remaining jurors to determine if Juror No. 14 told them anything about Jones.

The Sixth Amendment of the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to trial by an impartial jury. U.S. Const. amend. VI; N.J. Const. art. I, para. 10. "That constitutional privilege includes the right to have the jury decide the case based solely on the evidence presented at trial, free from the taint of outside influences and extraneous matters." State v. R.D., 169 N.J. 551, 557 (2001). A new trial should be granted only when the "intrusion of irregular influences into jury deliberations 'could have a tendency to influence the jury in arriving at its

16 <span>A-4211-16T4</span>

verdict in a manner inconsistent with the legal proofs and the court's charge.'" State v. Scherzer, 301 N.J. Super. 363, 486 (App. Div. 1997) (quoting Panko v. Flintkote, 7 N.J. 55, 61 (1951)).

When a juror informs the court that she has extraneous information relating to a witness, "[t]he court is obliged to interrogate the juror, in the presence of counsel, to determine if there is a taint; if so, the inquiry must expand to determine whether any other jurors have been tainted thereby." R.D. 169 N.J. at 558. The court must determine "whether the juror intentionally or inadvertently has imparted any of that information to other jurors." Id. at 560. "Depending on the juror's answers to searching questions by the court, the court must then determine whether it is necessary to voir dire individually other jurors to ensure the impartiality of the jury." Ibid. "[T]he decision to voir dire individually the other members of the jury best remains a matter for the sound discretion of the trial court." Id. at 561.

Our review of the record reveals that the court did not abuse its discretion when it decided not to individually question the jurors who were not excused. As a preliminary matter, we note that the invited error doctrine would permit this court to decline to review this issue. Van Syoc, 235 N.J. Super. at 465. Defense counsel, apparently satisfied that Juror No. 14 gave a credible account

of her interaction with the other jurors, declined the trial court's suggestion that voir dire of the other jurors might be necessary. We review the issue, however, for plain error. R. 2:10-2.

The court, having had the opportunity to question Juror No. 14 and to assess her credibility, determined that she did not share any information, other than reporting that she knew Jones, with the other jurors. In addition, the extent of Juror No. 14's relationship was Jones was limited and ended years before the trial. She did not have any personal knowledge of the events that gave rise to the indictments or Jones's involvement in those events. She expressed to the court no opinion on his credibility or character. The court acted within its discretion when it determined that questioning the other jurors about Jones would unnecessarily highlight him in their minds.

## IV.

The State concedes defendant cannot be convicted of both first-degree robbery of the store (count four) and first-degree robbery of the owner of the store (count five). A robbery conviction requires the jury to unanimously conclude that a defendant knowingly used or threatened force against a specific victim. State v. Gentry, 183 N.J. 30 (2005). Defendant's conviction under count four is, therefore, vacated.

A-4211-16T4

The State also concedes defendant was improperly convicted of both second-degree bodily injury aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two), and third-degree aggravated assault on a police officer while performing his duties resulting in bodily injury, N.J.S.A. 2C:12-1(b)(5)(a) (count three). The charges involve the same elements, State v Miles, 229 N.J. 83 (2017), and amount to two convictions for the same assault. State v. Graham, 223 N.J. Super. 571, 577 (App. Div. 1988). Defendant's conviction under count three must be merged with his conviction under count two.

V.

We reject defendant's argument that his sentence is excessive. "Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). We are satisfied that the judge's findings and balancing of the aggravating and mitigating factors are supported by adequate evidence in the record, and the sentence is neither inconsistent with sentencing provisions of the Code of Criminal Justice nor shocking to the judicial conscience. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Bieniek, 200 N.J. 601, 608 (2010); State v. Cassady, 198 N.J. 165, 180-81 (2009). Defendant, who had a lengthy history of criminal convictions, committed an armed robbery during which he shot a police officer and committed other offenses. He was subject to a

mandatory extended term, given that he is a two-time offender for a firearms charge.  N.J.S.A. 2C:44-3(d).  Forty-five years of imprisonment, close to the mid-range for a first-degree crime, is consistent with the gravity of defendant's criminal conduct.

To the extent we have not specifically addressed any of defendant's remaining arguments it is because we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Defendant's conviction on count four is vacated.  His remaining convictions are affirmed.  The matter is remanded for merger of his conviction on count three with his conviction on count two, and resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4211-16T4