SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. John T. Bragg** (A-13-24) (089446)

**Argued March 3, 2025 -- Decided May 6, 2025**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, the Court considers whether it was plain error not to instruct the jury about the "castle doctrine," a part of the law on self-defense. Under certain circumstances, individuals may use force against others to protect themselves. But they may not use deadly force if they can retreat with complete safety. The castle doctrine provides an exception to the duty to retreat: a person "is not obliged to retreat from his dwelling, unless he was the initial aggressor." N.J.S.A. 2C:3-4(b)(2)(b)(i).

On the night of September 30, 2017, defendant John Bragg drove Lorenza Fletcher, her cousin Daquan Anderson, and her three-year-old son to an apartment complex in Trenton, where he signed in with a security guard in the lobby of the complex. The State points to that as evidence defendant was a guest, not a tenant. The group then went to an apartment on the ninth floor. According to all three adults, defendant had a key to enter the apartment. Inside it was an air mattress, a television, pots and pans, and some alcohol. Defendant testified that he had an informal sublease with the apartment's tenant and had been staying there for "a few weeks" by the night in question.

At the apartment, a violent fight erupted. A neighbor eventually called the police. When the police arrived, all three adults required emergency medical care. The police arrested defendant and took him into custody. A grand jury later returned a nineteen-count indictment charging defendant with various offenses, including some, like attempted murder, for which self-defense may be asserted as a defense.

Defendant, Fletcher, and Anderson all testified at trial. Defendant claimed Fletcher and Anderson initiated the fight; they claimed defendant was the aggressor. Self-defense was a focal point of the trial. The State repeatedly questioned defendant about his claim of self-defense and highlighted that defendant did not retreat from the apartment in cross-examination and summation. The trial judge conducted two conferences about the proposed jury charge. The charge did not include guidance on the exception to the duty to retreat. The jury found defendant guilty of twelve counts in the indictment and of two lesser-included offenses.

1

The Appellate Division affirmed defendant's convictions and sentence.  The Court granted certification limited to the jury instruction regarding the duty to retreat. 258 N.J. 547 (2024).

**HELD:**  Whether defendant should have retreated was a critical part of certain offenses charged in this case.  Jurors heard the State press the point at trial; they also heard conflicting accounts of who the "initial aggressor" was and whether the apartment was defendant's "dwelling."  But the jury received no direction as to how those disputed facts related to -- or had the potential to negate -- the duty to retreat in this case.  Under the circumstances, the failure to give the jury guidance on the castle doctrine was clearly capable of producing an unjust result.  It was therefore plain error not to instruct the jury on the issue.

1.  Self-defense is an affirmative defense under the Criminal Code.  The use of force against "another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion."  N.J.S.A. 2C:3-4(a). "The use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm."  Id. at (b)(2).  "[N]or is it justifiable if . . . [t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating."  Id. at (b)(2)(b).  The latter requirement is known as the duty to retreat.  The Code contains an exception to the duty to retreat:  "The actor is not obliged to retreat from his dwelling, unless he was the initial aggressor."  Id. at (b)(2)(b)(i).  The Code defines "dwelling" broadly as "any building or structure, though movable or temporary, or a portion thereof, which is <u>for the time being</u> the actor's <u>home or place of lodging</u>."  N.J.S.A. 2C:3-11(c) (emphases added).  The definition encompasses an apartment and plainly extends beyond a permanent home.  Whether an act of alleged self-defense took place in an individual's "dwelling" is ordinarily a factual question for the jury, as is whether a defendant was the "initial aggressor."  (pp. 12-16)

2.  The Model Jury Charge for self-defense includes language about the duty to retreat. It sets forth the duty in one sentence and, in a second sentence labeled "charge where applicable," states that "[a]n exception to the rule of retreat, however, is that a person need not retreat from his or her own dwelling . . . unless he/she was the initial aggressor."  The Court asks the Committee on Model Criminal Jury Charges to add to the definition of "dwelling" by drawing from the text of N.J.S.A. 2C:3-11(c), but that does not affect its consideration of this appeal.  Here, the trial court read to the jury the sentence about the duty to retreat but not the second sentence about the exception to that duty.  The Court reviews in detail the discussions between the trial judge and counsel as the jury charges were prepared.  Although the conversations are difficult to follow without access to the draft charges under discussion, counsel ultimately agreed with the court's proposed charge and had no exceptions to the charge after it was read

2

to the jury. The Court thus reviews the failure to charge the jury on the exception to the duty to retreat for plain error -- error sufficient to raise a reasonable doubt as to whether it led the jury to a result it otherwise might not have reached. (pp. 16-22)

3. Here, both sides to the fight testified that they acted in self-defense. The State stressed the theme that defendant was obliged to retreat rather than use deadly force. The trial court instructed the jury on the duty to retreat but not about the exception to the duty to retreat. Whether the exception applied depended on two issues: Was defendant in his dwelling? And was he the initial aggressor? See N.J.S.A. 2C:3-4(b)(2)(b)(i). "Dwelling" is broadly defined by statute, and evidence in the record supported defendant's claim that the apartment was his dwelling. He testified that he had an informal sublease; other witnesses supported his claim that he lived in the apartment; and the police officers who responded confirmed there was an air mattress, clothing, cookware, and toiletries in the apartment. There was also disputed testimony about who the initial aggressor was. Each side accused the other of starting the fight, and each had injuries to support their claim. Both disputed factual issues were for the jury to decide. But the jury was not asked to resolve them. Nor did the jury receive any guidance about the significance of either issue or the overall exception to the duty to retreat. Without that information, the jury was clearly capable of finding that defendant was required to retreat rather than use deadly force. Yet a proper instruction was just as capable of leading jurors to conclude defendant had no such obligation and could stand his ground and defend himself if he was attacked. Under the circumstances here, the Court finds it was plain error not to instruct the jury on the exception to the duty to retreat. (pp. 22-25)

4. The Court rejects the argument that any error here was invited because nothing in the record establishes that defense counsel induced or encouraged the erroneous instruction. The Court asks that, to facilitate appellate review, trial judges mark for identification drafts of proposed jury charges discussed at charge conferences and retain them as part of the court file. Finally, although defendant now also challenges his convictions on the counts for which self-defense does not apply, that is not part of the grant of certification and is not properly before the Court for review. (pp. 25-28)

**REVERSED. Defendant's convictions on the counts that involved the issue of self-defense are VACATED and the matter is REMANDED to the trial court.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.**

SUPREME COURT OF NEW JERSEY
A-13 September Term 2024
089446

State of New Jersey,

Plaintiff-Respondent,

v.

John T. Bragg,
a/k/a John White,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 3, 2025 | May 6, 2025 |

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Stefan Van Jura, of counsel and on the briefs).

Colin J. Rizzo, Assistant Prosecutor, argued the cause for respondent (Janetta D. Marbrey, Mercer County Prosecutor, attorney; Colin J. Rizzo, of counsel and on the briefs, and Laura Sunyak, Assistant Prosecutor, on the briefs).

Avi Muller argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Chiesa Shahinian & Giantomasi, attorneys; Lee Vartan and Jeffrey P. Mongiello, of counsel and on the brief).

1

This appeal arises out of a violent fight between defendant John Bragg and two other adults. The fight took place in an apartment defendant claimed he was living in at the time. Defendant testified at trial that the other two individuals started the fight and that he acted in self-defense. They, in turn, testified that defendant initiated the fight. The prosecution argued that defendant had a duty to retreat from the apartment, which it claimed was not his dwelling, before he used deadly force.

Those core facts implicate the "castle doctrine," a part of the law on self-defense that lies at the center of multiple charges in this appeal. Under certain circumstances, individuals may use force against others to protect themselves. But they may not use deadly force if they can retreat with complete safety. N.J.S.A. 2C:3-4(b)(2)(b). The castle doctrine provides an exception to the duty to retreat: a person "is not obliged to retreat from his dwelling, unless he was the initial aggressor." N.J.S.A. 2C:3-4(b)(2)(b)(i).

At trial, the State cross-examined defendant at length about his ability to retreat. It also stressed that theme in its closing argument. The trial court then instructed the jury on general principles about self-defense and the duty to

2

retreat, but it did not provide instructions about the castle doctrine -- the exception to the duty.  Defense counsel did not object to the jury charge.

The jury found defendant guilty of various counts that involved the issue of self-defense, as well as additional counts that did not.  The Appellate Division found no plain error in the failure to instruct the jury on the exception to the duty to retreat.

Whether defendant should have retreated was a critical part of certain offenses charged in this case.  Jurors heard the State press the point at trial; they also heard conflicting accounts of who the "initial aggressor" was and whether the apartment was defendant's "dwelling."  But the jury received no direction as to how those disputed facts related to -- or had the potential to negate -- the duty to retreat in this case.

Under the circumstances, the failure to give the jury guidance on the castle doctrine was "clearly capable of producing an unjust result."  See State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2).  We therefore find it was plain error not to instruct the jury on the issue.  As a result, we vacate the counts of conviction that involved the issue of self-defense.  The other counts of conviction, for which self-defense was not a possible defense, remain intact.

I.

A.

In the early morning hours of October 1, 2017, defendant John Bragg, Lorenza Fletcher, and her cousin Daquan Anderson were involved in a violent fight. Fletcher's three-year-old son was also present.

Defendant met Fletcher in the summer of 2017. According to Fletcher, their relationship was based on an understanding that defendant would provide her with drugs and money in exchange for sex. Fletcher also testified that the relationship was fraught with violence and threats, and that she twice called the police. Defendant denied the claims and accused Fletcher of lying.

On the night of September 30, 2017, Fletcher arranged for defendant to pick her up along with Anderson and her son. Fletcher also testified that she called defendant because she knew he would provide her with drugs. Because she had left her child's sippy cup behind, she asked defendant to drive to a convenience store to buy one. When they failed to find a cup, defendant drove them to Kingsbury Towers, an apartment complex in Trenton.

Shortly after midnight on October 1, defendant signed in with a security guard in the lobby of the complex. The State points to that as evidence defendant was a guest, not a tenant. The group then went to an apartment on the ninth floor. According to all three adults, defendant had a key to enter the

apartment. Inside it was an air mattress, a television, pots and pans, and some alcohol. Anderson testified that he saw mail addressed to someone other than defendant in the apartment as well. Defendant stated he had some clothes in the apartment in a duffel bag.

Defendant testified that he had an informal sublease with the apartment's tenant; he said he had exchanged a used vehicle for four to six months' rent. He also testified he was in the process of moving to the apartment complex in September 2017 and had been staying there for "a few weeks" by the time of the fight. Neither Anderson nor Fletcher had been to the apartment before, but Anderson testified he knew defendant was staying there. Fletcher testified that she believed Bragg was still staying at a prior residence but that he had "said he got a place in Kingsbury."

At some point after the group arrived at the apartment, a violent fight erupted. After "a couple hours" of screaming and yelling, a neighbor called the police and reported that a woman was screaming for help. When the police arrived, Anderson let them in. He was covered in blood and had visible stab wounds. Fletcher, who came running to the door, was undressed and bleeding heavily from more than two dozen stab wounds. Her child was covered with blood but had only a scrape on his arm. Defendant was bleeding heavily from

5

a gash to his head and had a concussion. All three adults required emergency medical care.

The police found blood throughout the one-bedroom apartment. A porcelain toilet lid was shattered, and the pieces were scattered around the apartment. The police saw an air mattress and clothing in the bedroom, a frying pan and broken beer bottles in the kitchen, and toiletries on the floor. One officer said the apartment otherwise looked vacant.

Defendant, Fletcher, and Anderson all testified at trial and offered different versions of how the fight began. We briefly summarize their testimony, which establishes an important point: each side claimed that the other was the aggressor and initiated the fight.

1.

Defendant's version: Defendant stated he was the victim of an assault and attempted robbery. He testified that he supplied Fletcher and Anderson with drugs and left the apartment at Fletcher's request to get a sippy cup for her child. He suspected that Anderson and Fletcher wanted him out of the apartment to steal his drugs, and when he returned, he found Fletcher attempting to do so. According to defendant, Anderson then attacked him from behind and hit him in the head with the lid of the toilet tank, which

6

shattered.  When Anderson and Fletcher continued to assault defendant, he responded by attacking them with a small knife.

Defendant testified that, after the child woke up, Fletcher tried to calm the situation.  She allegedly tied Anderson up, got undressed, and offered defendant sex.  Defendant testified that Anderson later broke free and, along with Fletcher, attacked him again, stabbed him, and tried to tie him up.  Defendant then stabbed Fletcher while "fighting for [his] life."

## 2.

Fletcher and Anderson's version:  Fletcher and Anderson presented a very different description of what took place and testified that defendant started the fight.  Fletcher stated that after defendant gave her and Anderson a mix of drugs, she asked defendant to get a suitable cup for her child.  When he returned with a dirty cup, Fletcher got angry with him and began to pack up to leave.  An argument followed, and defendant allegedly went into a rage, hit Anderson, and stabbed him with a knife.

Fletcher and Anderson claimed that defendant said he would kill them both.  He tied Anderson up and then told Fletcher he was going to have sex with her "for the last time."  Not long after, Anderson began to cut himself free and later hit defendant over the head with the lid of the toilet tank.  Anderson

7

claimed defendant then threatened to kill them again and stabbed them repeatedly before the police arrived.

3.

The police arrested defendant and took him into custody. A grand jury later returned a nineteen-count indictment that included two counts of attempted murder, three counts of kidnapping, two counts of aggravated assault, four counts of terroristic threats, two counts of possessing a weapon for an unlawful purpose, a separate count of unlawful possession of a weapon, and one count of endangering the welfare of a child. The indictment also charged defendant with two counts of making terroristic threats and two counts of stalking related in part to previous behavior toward Fletcher.

B.

Defendant's trial began on March 1, 2022. In addition to the testimony outlined above, self-defense was a focal point of the trial. We discuss the legal framework for self-defense later but note here that the use of deadly force is not justifiable if an individual knows he can retreat with complete safety. N.J.S.A. 2C:3-4(b)(2)(b). An individual, however, "is not obliged to retreat from his dwelling, unless he was the initial aggressor." Id. at (b)(2)(b)(i).

At trial, the State repeatedly questioned defendant about his claim of self-defense and the duty to retreat. During cross-examination, the prosecutor

8

highlighted that defendant did not retreat from the apartment. At different times, the prosecutor asked, "Did you run at that point?"; "Did you run out of the apartment at that time[?]"; "Did you run?"; "You didn't run out of the apartment, right?"; "But you didn't run out of the apartment when you saw that."; "I asked you, did you leave the apartment when she was tying [Anderson] up?"; "So you didn't leave the apartment?"

The above passages span thirty-five pages in the transcript and address different parts of defendant's testimony. Some of the repetition stemmed from defendant not answering questions directly. The repetition also reflects the importance of the issue in the State's case.

During summation, the prosecutor argued to the jury that defendant should have retreated. She questioned defendant's "claim[]" that "he couldn't get out of the apartment." And she later asked the jury to consider that "[t]he defendant was the one with the weapon most of the time. Again, why would he not just run out of the apartment?"

The trial judge conducted two conferences about the proposed jury charge on March 11 and March 16. Later in the opinion, we review at length the discussion on the self-defense charge. The charge did not include guidance on the exception to the duty to retreat.

The jury found defendant guilty of twelve counts in the indictment for attempted murder, kidnapping, aggravated assault, terroristic threats, possession of a weapon for an unlawful purpose, and endangering. It also found him guilty of two lesser-included offenses of harassment. It found defendant not guilty of two counts of terroristic threats, one count of unlawful possession of a weapon, and one count of stalking. The State dismissed the second stalking count.

The trial court sentenced defendant to life imprisonment on one of the kidnapping counts. The court imposed concurrent sentences of (a) thirty years' imprisonment for the two other kidnapping counts and (b) twenty years' imprisonment for both counts of attempted murder. Most of the remaining counts merged with the above convictions.

C.

The Appellate Division affirmed defendant's convictions and sentence. Relevant to this appeal, the appellate court found no plain error in the failure to instruct the jury on the exception to the duty to retreat. The court credited the State's "substantial objective evidence showing the apartment was not defendant's dwelling" over defendant's "self-serving testimony."

Regardless, the Appellate Division concluded that "the evidence simply did not support a finding of self-defense" because "the jury did not believe

10

defendant's testimony and was obviously convinced he was the aggressor." In support of that ruling, the appellate court pointed to defendant's other convictions for kidnapping, endangering, and harassment.

D.

We granted defendant's petition for certification limited to the adequacy of the jury instruction regarding the duty to retreat. 258 N.J. 547 (2024). We also granted a motion from the Association of Criminal Defense Lawyers of New Jersey (ACDL) to appear as a friend of the court.

II.

Defendant argues that he was denied a fair trial because the jury charge failed to instruct that he had no duty to retreat from his own home. Without that guidance, defendant submits, the jury might have rejected self-defense based on a misunderstanding of the law. Defendant also contends that the decision to charge on self-defense depends on whether there is factual support for the defense, not on weighing competing claims. He adds that other guilty verdicts cannot permit an inference that the jury believed he was the aggressor.

Defendant contends the error in this case was not invited error. He maintains that the flawed jury charge constitutes plain error and requires that the judgment of the Appellate Division be reversed.

11

The ACDL supports defendant's position. It submits that the term "dwelling" includes a broad array of housing arrangements, including temporary housing. The ACDL also contends that any factual dispute about whether the apartment was defendant's dwelling should have been resolved by the jury.

The State maintains that the jury instruction on self-defense "contained no error leading to an unjust result." The State contends that because there was no rational basis to find the apartment was defendant's dwelling, there was no plain error in the jury charge.

In the alternative, the State argues that "any potential error in the jury instruction was harmless error" because the jury rejected defendant's testimony. The State also submits that any error was invited by defense counsel. It observes that counsel did not request an instruction on the exception to the duty to retreat and did not object to the charge the jury heard.

### III.

### A.

Self-defense is an affirmative defense under the Criminal Code. See N.J.S.A. 2C:3-1(a), -4(a). The use of force against "another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful

force by such other person on the present occasion." N.J.S.A. 2C:3-4(a). "Self-defense requires an 'actual, honest, reasonable belief' by a defendant in the" need to use force. State v. Perry, 124 N.J. 128, 161 (1991) (citing State v. Kelly, 97 N.J. 178, 198 (1984)).

"The use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm." N.J.S.A. 2C:3-4(b)(2) (emphasis added). "[N]or is it justifiable if . . . [t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating." Id. at (b)(2)(b). The latter requirement is known as the duty to retreat.

The Code contains an exception to the duty to retreat: "The actor is not obliged to retreat from his dwelling, unless he was the initial aggressor." Id. at (b)(2)(b)(i). Under the common law, that concept was referred to as the "castle doctrine." See State v. Canfield, 470 N.J. Super. 234, 307 (App. Div. 2022), aff'd as modified, 252 N.J. 497 (2023). As then-Judge Cardozo observed,

> [i]t is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home.
>
> [People v. Tomlins, 107 N.E. 496, 497 (N.Y. 1914).]

13

That longstanding principle undergirds the special treatment accorded a home or dwelling under the law of self-defense. State v. Montalvo, 229 N.J. 300, 319 (2017).

The exception to the duty to retreat is central to certain counts of conviction in this appeal. We therefore turn to its two components -- whether a given location is a defendant's "dwelling" and whether a defendant was the "initial aggressor."

The Code defines "dwelling" broadly as "any building or structure, though movable or temporary, or a portion thereof, which is for the time being the actor's home or place of lodging." N.J.S.A. 2C:3-11(c) (emphases added). The definition encompasses an apartment. State v. Bilek, 308 N.J. Super. 1, 12 (App. Div. 1998). And it plainly extends beyond a permanent home.

The statute tracks the language in the Model Penal Code. See MPC § 3.11(3) (Am. Law Inst., Official Draft 1985). An official comment on the meaning of "dwelling" notes that "[t]he definition settles the question of whether a tent, caravan or hotel bedroom may be regarded as a dwelling." MPC § 3.11 cmt. 3 (citing cases). The comment also cites Judge Cardozo's rationale for the castle doctrine and, in doing so, underscores the expansive meaning of the term "dwelling": the rationale "would seem to suggest that all

14

places should be covered that can be said to be in any sense a person's home, even temporarily." Ibid.

Whether an act of alleged self-defense took place in an individual's "dwelling" is ordinarily a factual question for the jury. See State v. Bonano, 59 N.J. 515, 518-21 (1971) (interpreting a predecessor statute and finding that the "defendant was entitled to a charge to the effect that if the jury believed from the evidence before it that he was standing at his own doorway, . . . he was under no duty to retreat"); State v. Martinez, 229 N.J. Super. 593, 604 (App. Div. 1989) (noting that "whether or not defendant was required to retreat" depended in part on "whether the jury believed that defendant was in or at his dwelling house when he employed deadly force in self-protection"); Commonwealth v. Hornberger, 74 A.3d 279, 286-87 (Pa. Super. Ct. 2013) (noting that whether an "apartment qualified as a temporary lodging, and hence a dwelling," presented "a valid question for the jury" and not the trial court).

Once again, the exception to the duty to retreat does not apply if the actor "was the initial aggressor." N.J.S.A. 2C:3-4(b)(2)(b)(i). That factual question is also for the jury to decide. See generally State v. O'Neil, 219 N.J. 598, 617 (2014) (noting that self-defense applied "[i]f the jury found that

15

defendant . . . was not the aggressor," among other conditions); <u>State v. Garcia</u>, 245 N.J. 412, 437 (2021) (same).

B.

The Model Jury Charge addresses various principles of self-defense. <u>See</u> <u>Model Jury Charges (Criminal)</u>, "Justification - Self Defense (N.J.S.A. 2C:3-4)" (revised Nov. 13, 2023). The model charge first summarizes certain general concepts, on which the trial court properly instructed the jury. Our primary focus instead is on additional language in the model charge about the duty to retreat:

> If you find that the defendant knew that he/she could avoid the necessity of using deadly force by retreating, provided that the defendant knew he/she could do so with complete safety, then the defense is not available to him/her. [**CHARGE WHERE APPLICABLE**: An exception to the rule of retreat, however, is that a person need not retreat from his or her own dwelling, including the porch, unless he/she was the initial aggressor. A dwelling includes a porch or other similar structure.]
>
> [<u>Ibid.</u> (footnotes omitted).][1]

The trial court included the first sentence in its instructions to the jury. It did not charge the remaining language.

---

[1] We ask the Committee on Model Criminal Jury Charges to add to the definition of "dwelling" by drawing from the text of N.J.S.A. 2C:3-11(c).

16

The trial court and the parties discussed the above paragraph during jury charge conferences on March 11 and 16, 2022. At the March 11 conference, the court acknowledged it was premature to make final decisions about a self-defense charge because "we haven't heard the defense case yet." To prepare to charge the jury as the trial neared conclusion, the trial court observed that any self-defense charge could apply only to the crimes of attempted murder, aggravated assault, unlawful possession of a weapon, and possession of a weapon. The court and counsel together noted the charge could not apply to kidnapping, terroristic threats, stalking, or endangering.

In the discussion that followed, the court and counsel reviewed a draft charge that is not part of the appellate record. Their comments appear to relate to the model jury charge -- in particular, the two sentences quoted above after the phrase "CHARGE WHERE APPLICABLE." We quote the discussion from the transcript in full:

> COURT: Okay. Other question which I had is if you get to Page 22 in Paragraph -- 22 in retreat, I'm going to need some guidance from you folks on the applicability of dwellings and things like that. And you know, I haven't heard any -- right now it's I'm just going to need guidance and nobody can provide guidance on that until we know what the defense says, but I'm just highlighting that as something that you guys need to think about.

> DEFENSE COUNSEL #1: You mean, just the one, the -- a dwelling --

17

COURT: Where it says, "charge where applicable," yes.

DEFENSE COUNSEL #1: Yeah.

COURT: I mean, you know, I don't know.

DEFENSE COUNSEL #1: I can't imagine that that needs to --

(Attorney discussion)[2]

COURT: And right now the evidence before the Court, it appears is that it's not his dwelling.

DEFENSE COUNSEL #2: I don't think that's --

DEFENSE COUNSEL #1: I don't think that that matters.

COURT: Other than the sign in sheet.

DEFENSE COUNSEL #1: Right, but I'm saying here it's charge where applicable and dwelling includes (indiscernible) of a similar structure. I don't think that --

COURT: That part, I mean --

DEFENSE COUNSEL #1: -- can come in.

DEFENSE COUNSEL #2: Yeah.

COURT: -- the fact that the structure that they were in would constitute a dwelling of somebody's is -- I don't think that's the issue, whether it's his dwelling,

---

[2] The discussion was not transcribed.

18

ability -- obligation to retreat in his own dwelling as opposed to somebody else's dwelling.

DEFENSE COUNSEL #2: I think the charge is clear that --

DEFENSE COUNSEL #1: Yeah, but I think the charge as it reads is fine the way it is.

COURT: Without the charge with applicable stuff?

DEFENSE COUNSEL #1: Right, yes.

COURT: Yes, okay. All right.

DEFENSE COUNSEL #1: It's just be the same -- it would just be how it is. (Indiscernible) by retreating.

COURT: All right. So, we'll just have to wait and see how things unfold on that.

Without the benefit of the draft charge the court and counsel had before them, it is difficult to follow the discussion. If one compares the exchange to the text of the model jury charge, it appears that defense counsel focused largely on the last sentence of the model charge's discussion on the duty to retreat. Counsel's references to "a dwelling" and "structure" use language from that sentence. See Model Jury Charge, Self Defense ("A dwelling includes a porch or other similar structure.") The trial court, by contrast, appeared to address multiple sentences in the model charge.

The relevant portion of the transcript of the March 16 conference is similarly hard to follow without a copy of the text that was discussed:

19

COURT: Okay. The Part 2 charges. I know that we had talked Friday about, you know, certain alterations that were going to have to be made. . . .

The self-defense charge obviously is included. Are you satisfied with the way that the self-defense charge reads?

DEFENSE COUNSEL #1: Yes, Judge. I don't think there's anything to add into that. The only thing and I know you mentioned this, and I don't know if it's still page 22 of 149 or if the pagination has changed, but I think the charge [where] applicable (indiscernible) similar structure (indiscernible).

COURT: And that's how we submitted it in its final form.

DEFENSE COUNSEL #1: Okay.

COURT: I think that the otherwise the language regarding deadly force, non-deadly force retreat. I think it's all appropriate in the general sense.

DEFENSE COUNSEL #1: Yep, I agree.

COURT: And the, I think that what we circulated took out the dwelling in the porch language.

DEFENSE COUNSEL #1: Okay, I just might be looking at an older --

COURT: Yeah, you might be working off the older one, I know that.

Prosecutor, any concerns regarding the adequacy of the self-defense charge?

PROSECUTOR: No judge.

20

That transcript again suggests there may not have been a meeting of the minds at the conference. Defense counsel recognized she may have been working off the prior draft version of the jury charge, and not the draft the judge was reading from, and once again quoted language -- "similar structure" -- from the last sentence of the model charge on the duty to retreat. Counsel, however, did agree with the court's proposed charge.[3]

Two days later, after the trial court read the charge to the jury, all counsel confirmed they had no exceptions to it.

IV.

A.

Because defense counsel did not object to the jury instruction on self-defense, we review it for plain error. State v. Cooper, 256 N.J. 593, 607 (2024). Under that standard, a reviewing court must "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Funderburg, 225 N.J. at 79 (quoting R. 2:10-2). Reversal is justified only when the error was "sufficient to raise 'a reasonable doubt . . . as

---

[3] We note for context that defendant's conduct during the trial may well have presented a challenge for counsel and the court. At various points during the second charging conference, for example, defendant interjected with questions, comments, complaints, and profanity. He also declined to answer a number of questions during his cross-examination. Those and other incidents required the trial court's repeated intervention.

21

to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (omission in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).[4]

Proper jury charges are essential to a fair trial, Cooper, 256 N.J. at 608, and the failure to provide a correct charge can amount to plain error, Montalvo, 229 N.J. at 321. Under the circumstances here, we find it was plain error not to instruct the jury on the exception to the duty to retreat.

Both sides to the violent fight in this case testified that they acted in self-defense. Defendant admitted he attacked Fletcher and Anderson with a knife but claimed he acted in response to their violent attacks against him. He testified that he had "no choice but to defend [him]self."

The State suggested defendant was obliged to retreat rather than use deadly force. It raised the issue in its cross-examination of defendant and stressed the theme in closing argument. The prosecutor asked defendant many times about whether he ran out of the apartment rather than continue to fight. And counsel directly asked the jury, "why would he not just run out of the apartment?"

---

[4] As an alternative argument, the State submits that any error in the jury charge was "harmless error." That less stringent standard does not apply because there was no objection to the charge. See Cooper, 256 N.J. at 607-08.

22

The trial court, as noted above, instructed the jury on the duty to retreat in part as follows: "If you find that the defendant knew he could avoid the necessity of using deadly force by retreating, provided that the defendant knew he could do so with complete safety, then the defense is not available to him." But the jury was not told about the exception to the duty to retreat. Whether the exception applied depended on two issues: Was defendant in his dwelling? And was he the initial aggressor? See N.J.S.A. 2C:3-4(b)(2)(b)(i).

As discussed earlier, "dwelling" is broadly defined by statute. It includes "any building or structure . . . which is for the time being the actor's home or place of lodging." N.J.S.A. 2C:3-11(c) (emphases added). The text of the statute draws from the Model Penal Code, which also comments on the expansive meaning of the term "dwelling." See MPC § 3.11 cmt. 3.

Evidence in the record supported defendant's claim that the apartment was his dwelling. He testified that he had an informal sublease with the apartment's tenant. And other witnesses supported his claim that he lived in the apartment. Anderson stated that he knew defendant was staying there. Both Anderson and Fletcher testified defendant had a key to the apartment. Plus the police officers who responded confirmed there was an air mattress, clothing, cookware, and toiletries in the apartment. To counter defendant's

23

claim, the State pointed to the apartment's sparse furnishings and mail addressed to a third party inside the unit.

There was also disputed testimony about who the initial aggressor was. Each side accused the other of starting the fight, and each had injuries to support their claim.

Both disputed factual issues were for the jury to decide. See Bonano, 59 N.J. at 518-21 (dwelling); Martinez, 229 N.J. Super. at 604 (same); O'Neil, 219 N.J. at 617 (aggressor); Garcia, 245 N.J. at 437 (same). But the jury was not asked to resolve them. Nor did the jury receive any guidance about the significance of either issue or the overall exception to the duty to retreat. Without that information, the jury was clearly capable of finding that defendant was required to retreat rather than use deadly force. Yet a proper instruction was just as capable of leading jurors to conclude defendant had no such obligation and could stand his ground and defend himself if he was attacked.

In addition, we cannot look to other counts of conviction to determine whether the jury concluded defendant was the aggressor. Self-defense did not apply to the kidnapping counts the Appellate Division alluded to. They required the jury to assess, among other things, whether defendant unlawfully confined a victim. See N.J.S.A. 2C:13-1(b). That question does not ask

24

whether defendant was the aggressor. Defendant's convictions for endangering and harassment likewise do not establish whether he was the aggressor for purposes of attempted murder, aggravated assault, or weapons offenses.

Even if we could look to other counts, we could not assume the jury's verdict would necessarily have been consistent. See State v. Banko, 182 N.J. 44, 56 (2004) (noting that courts "must accept . . . arguably inconsistent verdicts, and decline to speculate on" how jurors reach a verdict); State v. Goodwin, 224 N.J. 102, 116 (2016) (same).

Under the circumstances, we find that the failure to instruct the jury on the exception to the duty to retreat sufficiently raises "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached." Funderburg, 225 N.J. at 79 (omission in original) (quoting Jenkins, 178 N.J. at 361).

## B.

The State argues that if there was error, it was invited. We do not agree.

Under the invited error doctrine, "errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" State v. A.R., 213 N.J. 542, 561 (2013) (quoting

25

State v. Corsaro, 107 N.J. 339, 345 (1987)). In essence, a party cannot "invite" an error and then voice an objection on appeal. Ibid.

The doctrine is meant "to prevent defendants from manipulating the system." Jenkins, 178 N.J. at 359. At the same time, "[e]ven if a party has 'invited' an error, . . . courts will not bar defendants from raising an issue on appeal if 'the particular error . . . cut mortally into the substantive rights of the defendant.'" A.R., 213 N.J. at 562 (second omission in original) (quoting Corsaro, 107 N.J. at 345). Nor would the doctrine apply automatically if it would "cause a fundamental miscarriage of justice." DYFS v. M.C. III, 201 N.J. 328, 342 (2010) (quoting Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 508 (1996)). In that regard, courts consider "the nature of the error, its impact on the . . . jury's verdict, and . . . defendant's motives and conduct in bringing about the error." Corsaro, 107 N.J. at 346 (first omission in original) (quoting State v. Harper, 128 N.J. Super. 270, 278 (App. Div. 1974)). Among other things, courts may consider whether defense counsel acted out of confusion rather than to achieve a strategic advantage. See id. at 347.

Nothing in the record before us establishes that defense counsel induced or encouraged the erroneous instruction. During the charge conferences, it appears that the parties and the court may have spoken past one another at times without realizing they were doing so. There was also confusion about

26

which draft language was under consideration at the final charge conference. But there is no basis to conclude that counsel attempted to manipulate the process. For those reasons, as well as the nature of the error here, we do not apply the invited error doctrine.

C.

For counts that involved the issue of self-defense and the duty to retreat, we hold that the failure to instruct the jury on the exception to the duty to retreat was "clearly capable of producing an unjust result." Funderburg, 225 N.J. at 79; R. 2:10-2. The flaw in the instruction, which is not subject to the invited error doctrine, amounts to plain error. We therefore vacate the convictions for attempted murder (Counts 1 and 2), aggravated assault (Counts 6 and 7), and possession of a weapon for an unlawful purpose (Counts 14 and 15).

D.

We recognize that jury charge conferences are conducted toward the end of a trial, sometimes in a time-pressured atmosphere. And we appreciate that preliminary versions of draft charges are not always polished, final products.

It is also common for participants looking at a draft charge to use shorthand references when they discuss it, as happened in this case. The resulting record can be challenging to follow.

27

To facilitate appellate review, we ask trial judges to mark for identification drafts of proposed jury charges discussed at charge conferences and to retain them as part of the court file.

V.

The jury also found defendant guilty of kidnapping (Counts 3 through 5), terroristic threats (Counts 8 and 10), harassment (lesser included offenses under Counts 11 and 12), and endangering (Count 17). Although self-defense was not a possible defense to those counts, defendant now argues that they should be dismissed as well.

Defendant did not raise the issue in his petition for certification but addressed it at some length at oral argument. Because the issue is not part of the grant of certification, it is not properly before the Court for review. State v. W.B., 205 N.J. 588, 615 (2011); In re Estate of Stockdale, 196 N.J. 275, 300 n.4 (2008).

VI.

For the reasons set forth above, we reverse the judgment of the Appellate Division and vacate defendant's convictions on Counts 1, 2, 6, 7, 14, and 15, which involved the issue of self-defense. The other counts of conviction remain intact. We remand to the trial court for any further proceedings in this matter.

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in CHIEF JUSTICE RABNER's opinion.